1810.

*Philadelphia,
Thursday,*
January 11.

GUIER surviving executor of GEORGE COOPER
*against* KELLY and Wife.

An executor
who receives
the surplus pro-
ceeds of his
testator's land
which has been
sold under exe-
cution, is
chargeable with
them in account
as executor, not-
withstanding he
is husband of the
devisee of one
half the estate,
and claims to
have received
them in that
character.

If an executor
purchase the
real estate of his
testator at
sheriff's sale,
and it is after-
wards sold
again, in conse-
quence of his
not adhering to
his purchase, he
is chargeable in
account with
the largest of
the two sums at
which it was
struck off.

| 2 B | 294 |
| 21 SC | 206 |

| 2 B | 294 |
| 209 | 219 |

APPEAL from the Orphan's Court of *Philadelphia*
county.

The account of the appellant, as executor of *George
Cooper*, having been settled by auditors, and a *pro forma*
decree in confirmation of the report having been rendered
by the Orphan's Court, he entered the present appeal, and
filed seven exceptions to the decree.

The *first*, which was the only material exception, was as fol-
lows. " For that in the account returned to the said Orphan's
" Court by the said auditors, and annexed by them to their re-
" port in the said cause, the said auditors have charged the ap-
" pellant with, and the Orphan's Court have allowed the charge
" of, the sum of *eight thousand three hundred and twenty dol-
" lars* as the price at which the house of the said *George Cooper*,
" situate &c., sold at, and ought to be accounted for by the
" said executor, when in truth and in fact the sum received
" therefrom by him was but *seven thousand two hundred and
" twenty-five dollars*, and the said appellant ought not to
" have been charged with any other or larger sum." The
*second* exception, which was to a charge against the appellant
for rent received from some real estate of which *Cooper*
died intestate, was allowed by the appellees. The *third*,
*sixth*, and *seventh*, were exceptions to the rejection of certain
credits claimed by the appellant, which he gave no evidence
in this court to substantiate. The *fourth* was to the rejection
of a credit for groundrent due by the estate of *Cooper*, and
paid by the appellant, part of which was due at *Cooper's*
death, and part accrued afterwards; and this exception was
allowed as to the first part by the appellees, and waived as
to the residue by the appellant. The *fifth* was to an over-
charge of interest, which was matter of calculation.

The facts which bore upon the *first* exception were these:
The house in question was devised by *Cooper* to his two
daughters, the wife of the appellant and her sister, in fee as

tenants in common, the latter of whom died before the testator, and of her moiety he died intestate. At his death he left two children, and the issue of two who were dead; so that the wife of the appellant was entitled to five eighths of the house, one half by the devise, and one fourth of the residue under the intestate law. *Cooper* left other real estate to a considerable amount; but under a judgment obtained against him in his lifetime, the house alone was taken in execution and sold by the sheriff. At the first sale a perfectly good offer of 8300 dollars was made to the sheriff, upon which the appellant bid 8320 dollars, and it was struck off to him. *Guier* did not comply with the terms of sale; and it was put up a second time, and bought for 7225 dollars, by the same person who at the first sale bid 8300 dollars.

*Levy* for the appellant argued, that the proceeds of the house should not in any shape have been introduced into the account of the executor. His office exclusively concerns the personalty of the testator, unless he is invested by the will with power to sell; and even in that case he is more a trustee than an executor, and subject to account in the former, rather than in the latter capacity. But in the present instance, the land was sold under execution, and the proceeds have come to him not as executor, but as the husband of a devisee and representative. Under what principle have the appellees admitted the *second* exception, unless upon this, that what the appellant has not received as executor, he cannot as executor be charged with. If indeed he had not been entitled to take the money except as executor, there might be some reason for the charge; but when at the same time he has no right to it in this character, and has a right to it in another, how can it be argued that his rightful receipt of it should be negatived, to make him account for it in a wrongful capacity? It would be serious injustice to him; because if he brings it into his account, he must sue the other devisees for a contribution, as his wife's part of the estate will have paid more of the debt than it ought to, five eighths instead of a fourth. The proper course in such a case, is to leave it with the devisee to whom it has been paid, subject to the suits of other devisees, if they have a right to a portion of it. But

*1810.*

GUIER
*v.*
KELLY.

1810.·

GUIER
v.
KELLY.

the difference between the sum actually received, and the sum for which the house was first sold, is a still more exceptionable charge. An executor is not to be debited with what the property might have brought at public sale, but with what it did bring. If he has been guilty of negligence or malconduct, the remedy is by an action for damages. *Guier* did not bid for the house either as executor or devisee, but as any other individual; and if he failed to perform his contract, either the sheriff or the devisees should ·sue him for the breach of it. Neither the Orphan's Court, nor this court upon an appeal, have any jurisdiction of a question of this sort. They are respectively confined to the obligations and rights of the executor, in relation to his conduct as such; and if they can debit his account with an item of damages for breach of a contract which he individually made with the sheriff, it will follow that every contract in relation to the estate, by the person who happens to be executor, with any of the devisees, may be made the subject of an account.

*C. J. Ingersoll* and *Hopkinson* for the appellees, said that whatever might be the fate of the exceptions, this court, they understood, would merely set the account right, and not send it back to the Orphan's Court. [TILGHMAN C. J. If there are errors in the account, this court will settle them like the Orphan's Court, and not set aside the whole account reported. The auditors are merely clerks.]

They then argued, that the first exception admitted the receipt of 7225 dollars by the appellant as executor, and that he ought to be charged with it; of course all that had been said of his receiving it in another character, came too late. But independent of this, there was a radical defect in the opposite argument, in this particular, that it supposed the house to have been sold as the property of the devisees, whereas it was sold as the property of the testator, and converted into money, the overplus of which beyond the debt, the sheriff was bound to pay to the executor who represented the defendant in the execution. 1 *St. Laws* 67. *section* 7. The case of *Yohe* v. *Barnet* (*a*) shews, that when real estate

(*a*) 1 *Binn.* 358.

is sold under the authority of an act of assembly, it becomes personalty, and goes as such. The executor is bound to pay it to those who would have the realty; but he pays it as executor, in the same manner ás he would pay a legacy. The rule of the *English* law has never governed the practice in *Pennsylvania* in cases of this kind. Lands are in this state considered as chattels for the payment of debts. They are taken in execution under judgments either against the testator or executor; and as the latter is bound to pay all debts, whether the heir is made liable by the contract or not, the fund, whenever it is converted into money by execution, should pass through his hands. Such has universally been the practice; and it is certainly most convenient that all the money of the estate, however raised, should take this direction, that the fund for payment of debts may be at the disposal of the person who is bound to liquidate them. The objection to the charge of the sum for which the house was first sold, is also founded in a misapprehension. We do not claim the difference as damages for the breach of contract; but we demand the original sum, without regard to the second sale. *Guier* bought the house for 8320 dollars, and as the same hand that was to receive the money was to pay it, the money is to be considered as received by him. The second sale was for his account and not ours.

*Levy* in reply observed, that whatever might be the admission in the first exception, if the court saw that they wanted jurisdiction of the item, no admission could give it to them. Exceptions are merely for the convenience of counsel. The whole account of the auditors is open upon an appeal, and the court, without any exception, may correct the errors of it. As to the right of the executor to receive the money under the act of 1705, that law directs the overplus to the defendant upon the presumption that he was the proprietor of the land at the time of sale; but it cannot apply where the defendant's right is transferred. If the executor has strictly a right to receive it, it would follow that he could take it where he was manifestly insolvent, and there was not a debt to pay.

VOL. II. 2 P

1810.

GUIER
v.
KELLY.

TILGHMAN C. J. delivered the court's opinion.

This is an appeal from the Orphan's Court of *Philadelphia* county. The appellant has made seven exceptions to the decree, of which the 1st is the most material. He complains that he has been charged the sum of 8320 dollars, as the price at which a certain house, the property of the testator, was sold; whereas in truth the sum received was but 7225 dollars, and he ought not to have been charged with any other or larger sum. This house was devised to the wife of the appellant, and her sister Mrs. *Seckle*, in fee as tenants in common. Mrs. *Seckle* died in the lifetime of the testator, so that as to her moiety of the house there was an intestacy; in consequence of which, one fourth of that moiety descended to the wife of the appellant. Although the exception admits that the appellant received the price at which the house was sold, yet in the course of the argument his counsel denied that the item was properly chargeable in the account of the executor, because as executor the appellant had nothing to do with the real estate, and this house was sold, not by him, but by the sheriff on an execution against the estate of the testator. This objection is worthy of consideration. By the law of *England*, the price of the house could not be brought into the executor's account, nor would any part of the money have come to his hands. In that country, lands are not chargeable with simple contract debts, nor even with a bond debt, unless the heir is expressly bound. And where the land is chargeable, the action is brought against the heir or devisee, and not against the executor. But in *Pennsylvania* the case is different. At a very early period, lands were made subject to debts of all kinds, and the uniform practice has been, to bring the action against the executor, and judgment being obtained against him, to levy on the lands in the hands of the heir or devisee. It has also been the practice in case of an execution against lands, to pay the surplus beyond what will satisfy the execution, to the executor, in whose hands it is assets for the payment of other debts. This practice is very proper and very convenient; because, until the administration account is settled, it cannot be known what debts against the testator remain unpaid; and if the surplus was returned to the heir or devisee whose land had been sold,

and then other debts of the testator should appear, there would be a necessity for new suits and executions for the purpose of selling other lands, by which the estate would be subject to heavy costs. It is to be understood however, that if a devisee, or one of the heirs, loses his lands by an execution, he is entitled to a contribution from the owners of the remaining part of the testator's lands. I do not say, that there may not be cases where, on its being made to appear to the court, that there are no other debts of the testator outstanding, or that the executor is in insolvent circumstances, the court might think it proper to order the surplus money to be paid to the heir or devisee. But that is not the present case; for the appellant has confessed by his exception that the money has been received by him, and it is an exception not to be favoured, inasmuch as it only tends to turn the appellees round to another form of action. I am satisfied that it was right to bring the price of this house into the administrator's account.

But the greatest difficulty remains. The fact was that when the house was put up for sale by the sheriff, the sum of 8300 dollars was bid by Mr. *Stokes.* The appellant made a bid of twenty dollars more; and the house was struck off to him. He refused to comply with his contract, in consequence of which the sheriff made a second sale, and the house went off at only 7225 dollars, the difference between the first and second sale being one thousand and ninety-five dollars. With this difference the appellant was charged by the Orphan's Court; and he excepts to it, because it is the proper object of an action at law, in which damages might be recovered for breach of contract. But this transaction seems so interwoven with the price of the house, that it may be considered as an accessary to it; and the Orphan's Court having jurisdiction of the one, will likewise have it of the other. The actual price of the house cannot fairly be ascertained, without taking the whole matter into consideration. The Orphan's Court, in matters within their jurisdiction, proceed on the same principles as a Court of Chancery. Their powers under our acts of assembly are very extensive. I think it cannot be doubted but a Court of Chancery would charge a trustee with a sum of money lost by such conduct.

1810.

GUIER
*v.*
KELLY.

in the sale of an estate. If a trustee purchase an estate which is entrusted to him to sell, his purchase will be declared void, and a new sale ordered. If the second sale produces more than the first, he must account for it; but if less, he is chargeable with the difference. He is not suffered to say that the estate was not worth what he agreed to give for it. This is the principle which the Orphan's Court have adopted, and I cannot say that I disapprove of it. Mr. *Stokes* has proved that his bid was within twenty dollars of the appellant's, and he was ready to pay the money. It is evident therefore, that the appellant did in fact prevent the receipt of *Stokes'* money. Upon a view of all the circumstances of this case, I am of opinion that the first exception has not been supported.

The 2d exception is allowed by the counsel for the appellee.

The 3d, 6th and 7th exceptions are founded on matters of fact, which it was incumbent on the appellant to prove. He has produced no evidence, and therefore these exceptions stand unsupported.

The 4th exception is waived by the appellant, except so far as concerns the amount of groundrent due at the death of the testator, as to which it is allowed by the appellees.

The 5th exception relates to the charge of interest. If the parties cannot adjust it themselves, the court will direct it to be settled on the principles laid down in the case of *Wilcocks* v. *Fox* (a).

(a) 1 *Binn.* 194.