BRACKENRIDGE, Administrator, v. HOLLAND and Others.

The jurisdiction of a Court of Chancery extends to the accounts of administrators, though settled in the Probate Court, if there be evidently a mistake or fraud in the settlement.

A trustee, no matter how or from whom he derives his authority, cannot purchase the trust-estate so as to make a profit to himself. He is not prohibited from purchasing; but his purchase, when made, is for the benefit of the cestui que trust, who may, if he apply within a reasonable time, have a re-sale. If the property be offered for sale a second time, and there be no advance, the trustee is held to his purchase.

If an administrator, authorised by an order of Court to sell, at public sale, the real estate of his intestate for the payment of debts, purchase the land himself at the sale; and, afterwards, sell the same at an advanced price; he is liable to account for the profits to the heirs, for whose benefit the administrator's purchase must be considered to have been made. And the effect is the same, whether the purchase be made by the administrator alone, or jointly with another; or whether it be made in person or by an agent.

If, owing to the conduct of the administrator, any uncertainty exist as to the amount of the profits made by him on the purchase, he will be chargeable with the largest amount which, from the circumstances, he can be presumed to have realized.

It is a rule, both at law and in equity, that if a person having charge of the property of another, so confounds it with his own that it cannot be distinguished, he must bear all the inconvenience of the confusion; and, if it be a case of damages, the damages given against him will be to the utmost value of the property.

ERROR to the *Franklin* Circuit Court.

HOLMAN, J.—The heirs of *John Holland*, deceased, filed their bill in chancery, stating that their father in his life-time, about the 1st of *November*, 1817, purchased of *Robert* and *Joseph Brackenridge*, a tract of land for the sum of 2,490 dollars; of which he then paid 600 dollars, and was to pay the balance by instalments, for which he executed several notes, bearing interest from the date, the last payment to be made in six years;—that their father died in 1818, and administration of his estate was committed to *Joseph Brackenridge* and *George L. Murdock;*—that the administrators received large sums of money for the personal property, and for debts due to the decedent, which, with the annual profits of the land, would have enabled them to pay off the notes for the purchase-money of the land as they became due; there being no other debts of any conside-

*Tuesday, December 14.*

48

rable amount against the decedent;—that, notwithstanding this, *Brackenridge*, in the absence of *Murdock*, filed an affidavit in the Probate Court, stating that the personal estate was insufficient to pay the debts, and thereby procured an order of the Probate Court, in *June*, 1819, for a sale of the land;—that he made no return of his proceedings under said order; but, from a deed in the recorder's office, it appears that *Robert* and *Joseph Brackenridge*, on the 20th of *August*, 1819, conveyed the said land to *Piatt*, *Grandon*, and *Armstrong*, in consideration of 2,500 dollars;—that, by the records of the Probate Court of the 25th of *February*, 1823, it appears that the administrators made a settlement of the accounts in that Court; and, in the account then exhibited, the estate is credited by 1,600 dollars as the price of the land, instead of the sum of 2,500 dollars;—that, from this settlement, it appears that there was then in the hands of the administrators, the sum of 209 dollars and 86 cents; but the bill charges, that this settlement did not embrace the moneys received by *Murdock*, and was not a correct account of the moneys received by *Brackenridge*. The bill further charges, that *Murdock* has received and wasted moneys belonging to the estate to the amount of 600 dollars, and states that, in 1826, *Joseph Brackenridge* died, and *Robert Brackenridge* was appointed his administrator. *Robert Brackenridge* and *Murdock* are made defendants. The bill prays for a full account of the administration, and that the estate of *Joseph Brackenridge*, in the hands of *Robert Brackenridge*, may be charged with the 2,500 dollars for which the land was sold.

*Robert Brackenridge* pleaded, in bar of the action, the settlement made in the Probate Court by *Joseph Brackenridge*. To this plea there was a demurrer, which was sustained by the Circuit Court. He then answered; and his answer admits the sale of the land to *Holland*, but states that a large quantity of personal property was included in the contract. He states, that he does not know the value of the personal estate, or the manner in which it was administered, but by reference to the account rendered by *Joseph Brackenridge* in the Probate Court, which he believes to be correct; that the land was sold, by virtue of the order of the Probate Court, at public auction; that the sale was fair; that he and his partner, *Joseph Brackenridge*, became the purchasers at the sum of 1,600 dollars, which,

he avers, was the full value; and that they made the purchase for themselves, and not for the benefit of the heirs. He admits that he and his partner sold the land to *Piatt, Grandon,* and *Armstrong,* and that the consideration that is expressed in the deed is 2,500 dollars; but he says that that was not the real consideration, as the land was exchanged, with other real property, for a lot of merchandise estimated at 6,000 dollars; and that he does not believe it would have sold for 1,600 dollars in cash.

*Murdock* answered, and, with some account of his separate administration, denies taking any part in the settlement in the Probate Court; stating that it was made without his knowledge, and that he had no hand in receiving or disbursing any part of the estate set forth in that account. He denies having had any concern in the sale of the land; and states that, being about to leave the state, his co-administrator expressed an opinion that the estate was perfectly solvent, and that he was willing to take back the land in discharge of the debt due from the estate to himself and partner; and that during his absence the land was sold.

We learn from the depositions, that *Holland,* when he purchased the land, received with it of *R.* and *J. Brackenridge* about 500 dollars worth of personal property, which formed a part of the contract; that 1,600 dollars was a high price for the land, at the time it was purchased by *R.* and *J. Brackenridge* in 1819; but that no material variation had taken place, in the value of the land, between the years 1817 and 1819. The order of the Probate Court shows, that the Court fixed the terms of credit, the day and place of sale, and ordered their clerk to make out advertisements, &c. The auctioneer testifies that the sale was public, that a large collection of people were present, that the land was cried for a long time, and was bid off by *John Shanks* for *R.* and *J. Brackenridge. Grandon,* one of the firm, to whom *R.* and *J. Brackenridge* sold the land, states that it was purchased by them, with other real property, in a contract for merchandise; that the only reason why they purchased the land was, that they had a large quantity of merchandise, and were anxious to dispose of it. *Murdock's* deposition was taken; in which he makes some charges against his co-administrator of moneys not accounted for, and repeats the statement in his an-

Nov. Term,
1830.

BRACKEN-
RIDGE
v.
HOLLAND.

swer, that his co-administrator expressed a willingness to take back the land in discharge of the debt to himself and partner.

On the final hearing of the cause, the Circuit Court entered a decree against *Robert Brackenridge*, as administrator of *Joseph Brackenridge*, for the sum of 569 dollars and 62 cents, with interest from the 25th of *February*, 1823, amounting in all to 808 dollars and 86 cents, to be levied of the goods, &c. of his intestate; and a decree against both of the defendants, for 104 dollars and 25 cents principal and interest, being a sum for which the estate of *Joseph Brackenridge* and *Murdock* were jointly liable; and postponed the account of the separate administration of *Murdock* for further consideration. From this decree, *Brackenridge* alone appealed to this Court.

Two leading questions are presented for our determination. The first regards the jurisdiction of a Court of chancery, to inquire into a settlement of an administration account in the Probate Court. The second, the right of an administrator to purchase lands which he, as administrator, is authorised to sell.

The first has been settled, at the present term, in the case of *Allen* v. *Clark*. It is there determined, that the settlement in the Probate Court is to be taken as *prima facie* correct, but is not conclusive; that, on a proper case being made, the account may be re-examined in a Court of chancery. Here, the disposition of the land presents a case, that more particularly requires the interposition of a Court of chancery.

The second question seems also to be settled. A trustee, no matter how or from whom he derives his authority, cannot purchase the trust-estate so as to make a profit to himself. There is no general rule that he shall not be a purchaser; but if he is, his purchase is for the benefit of the *cestui que trust*. If the trustee to sell becomes a purchaser, however fair the transaction, it is subject to an option in the *cestui que trust*, if he comes in a reasonable time, to have a re-sale. *Campbell* v. *Walker*, 5 Ves. 678. If it is offered for sale a second time, and there is no advance of price, the trustee is held to his purchase. *Lister* v. *Lister*, 6 Ves. 631. Where the sale was effected through the medium of a trustee, and he became the purchaser, though without fraud, and by auction, the sale was set aside; the circumstance of its having been by auction made no difference. *Sanderson* v. *Walker*, 13 Ves. 600. A trustee is not permitted

to purchase a mortgage, or judgment, that is a lien on the trust-estate, for his own benefit. *Green* v. *Winter*, 1 J. C. R. 27. An executor, acting with regard to the testator's property in any other manner than the trust requires, is answerable to the *cestui que trust* for any gain, and liable for any loss. *Piety* v. *Stace*, 4 Ves. 620. In *Maryland*, an administrator or executor cannot purchase at his own sale, and the confirmation of such purchase in the Orphans' Court, does not preclude the Court of chancery from setting it aside. *Conway* v. *Green*, 1 Har. & J. 151. In *North-Carolina*, an executor is not permitted to become a purchaser in a sale made by him as executor, notwithstanding such sale be public, necessary, fair, and for a full price. *Ryden* v. *Jones*, 1 Hawks. 497. In *South-Carolina*, the same principle is maintained to a general extent. *Perry* v. *Dixon*, 4 Desauss. 504. The three last cases are given on the authority of 3 Wharton's American Digest, 276, 278. The case of *Guier* v. *Kelly*, 2 Binn. 294, cited by the counsel for the appellant, accords in principle with these decisions. A contrary doctrine seems to prevail in *Virginia;* but we think from the foregoing cases, and many more that are in accordance with them, that the purchase made by *R.* and *J. Brackenridge*, under the order of the Probate Court, must be considered as made for the benefit of the heirs. The circumstances of the time, place, terms of credit, and manner of giving notice of the sale, being regulated by the Probate Court, does not materially change the case, as much was still left in the power of the administrator; and he might have exerted an influence on the sale that lies beyond the ordinary means of detection. The object of the rule is to banish from his mind all thought of speculating on the trust-estate. A method is suggested in the books, whereby he might legally become the purchaser. If the land was publicly exposed to sale, and he was willing to go beyond the highest bid, he might postpone the sale, file a bill, or report the fact to the Court from whence he derived his authority; showing the amount of the highest bid, and that he was willing to give more. The Court might order that he should have the land. *Davoue* v. *Fanning*, 2 J. C. R. 261.—*Campbell* v. *Walker*, 5 Ves. 678.

This case is not altered, in principle, by *Robert Brackenridge* uniting with the administrator in the purchase, nor by the land

being bid off for them by *Shanks;* for the rule extends to a purchase made by a trustee for another person; *ex parte Bennett,* 10 Ves. 381; and to a purchase made by a third person for the wife of the trustee. *Davoue* v. *Fanning,* 2 J. C. R. 252. In this last case, the executor was authorised to sell lands to raise legacies for the testator's children, of whom the wife of the executor was one. The executor and his wife authorised a third person to purchase in trust for the wife. After the purchase, large improvements were made on the land. Chancellor *Kent,* after reviewing a long train of uniform decisions on the subject, ordered a re-sale: the land to be set up at a sum which included the price of the former purchase, and the value of the improvements; and, if it would not sell for more, the purchase to stand, but if it sold for more, the former sale to be vacated. The rule mentioned in some of these cases, that the *cestui que trust* must apply in a reasonable time to have a resale, or the purchase will be considered valid, does not apply in this case. Most of the heirs are still minors, whose interest is seldom affected by lapse of time; besides, the sale of the land by *R.* and *J. Brackenridge* to *Piatt, Grandon,* and *Armstrong,* in less than two months after the purchase, and before any report was made of the proceedings under the order of sale, precluded the heirs from demanding a re-sale. In such a case, the rule is, that the trustee shall account for all the profits he has made. One of several trustees having purchased the trust-property, and afterwards sold it at a profit, was decreed to account for that profit. *Whichcote* v. *Lawrence,* 3 Ves. 740. In *Randall* v. *Errington,* 10 Ves. 422, there was a fair sale, and the trustee purchased at auction for a full price, yet as he had sold a part at some profit, the Court opened the sale, at the instance of the *cestui que trust,* as to the parts unsold, and compelled the trustee to account for the profits on the parts he had sold. An executrix suffered land, of which the testator died seized, to be sold under a mortgage, and became the purchaser in her own right, and afterwards sold it; and she was held accountable to the heirs for the proceeds of the sale. *Everlson* v. *Tappen,* 5 J. C. R. 497 (1).

The most serious difficulty, in this case, is to determine the amount of profits made by *R.* and *J. Brackenridge* in selling this land to *Piatt, Grandon,* and *Armstrong.* The consideration in the deed is 2,500 dollars, which is 900 dollars more than the

price of the first sale; but the land was exchanged with other property, for a lot of merchandise. This difficulty, however, arises from the act of the administrator, and he is chargeable with all the inconveniences that have resulted from that act. The rule both in law and equity is, that if a person having charge of the property of another, so confounds it with his own that it cannot be distinguished, he must bear all the inconvenience of the confusion. If it be a case of damages, damages will be given against him to the utmost value of the articles. *Lupton* v. *White*, 15 Ves. 432.—*Hart* v. *Ten Eyck*, 2 J. C. R. 62. *Armory* v. *Delamirie*, 1 Strange, 505. This rule, applied in all its strictness, would charge the administrator with the nominal amount, stated in the deed as the consideration of the conveyance; unless he could show that the consideration was a less sum. And, although that sum was received in merchandise, the case would not be altered, unless it was clearly shown that there was a difference between that amount in merchandise and in cash, and what that difference was. There are some other facts in the case that have a remote bearing on this question. A short time before the sale of this land by the administrator, he expressed to his co-administrator a willingness to take back the land in discharge of the original purchase-money, which then amounted to near 2,000 dollars; which would have allowed the estate of *Holland* nearly 400 dollars more than he has accounted for. This land was purchased by *Holland* of *R.* and *J. Brackenridge* in 1817, for 1,990 dollars, allowing 500 dollars as the price of the personal property, and supposing 500 dollars of the money advanced by *Holland* were to pay for the personal property. Then, 100 dollars were advanced for the land. For the balance a credit was given, but it bore interest from the time of the purchase. Then, at the time of the administration sale, the amount due for principal and interest, together with the sum advanced, was but little short of 2,200 dollars; which was the sum that the heirs of *Holland* might be said to be paying, and *R.* and *J. Brackenridge* receiving for the land, at the time they bid it off at 1,600 dollars, and at the time they sold it, as they say, for the nominal consideration of 2,500 dollars; and we learn that no material variation in the price of the land, had taken place between the time when *Holland* purchased, and the time of the sale to *Piatt*, *Grandon*, and *Armstrong*. We men-

Nov. Term,
1830.

BRACKEN-
RIDGE
v.
HOLLAND.

tion these circumstances, not as presenting any definite criterion of the profit made by the administrator, but to show that he has but little reason to complain of the decree of the Circuit Court.

There is so much obscurity in the accounts of both the administrators, as to their separate and joint administration, that we are not able to discover the precise data upon which the Circuit Court predicated its decree; but this is unimportant, as we are fully satisfied that the separate decree against *Brackenridge*, from which alone it is presumed he appealed, is authorised by the facts in the case, and must be affirmed.

*Per Curiam.*—The decree is affirmed, with 2 *per cent.* damages and costs.

*M'Kinney* and *Caswell*, for the plaintiff.
*Morris*, for the defendants.

(1) Vide *Whelpdale* v. *Cookson*, 1 Ves. sen. 9.—Same case stated more at large, Belt's Supp. 7. "Although there is no positive rule, that a trustee to sell shall not, in any case, be himself the purchaser, inasmuch as he *is not* precluded from entering into a new contract with his *cestui que trust,* yet he is not permitted in any other case to make a profit to himself. *Whichcote* v. *Lawrence,* 3 Ves. jun. 740. Upon which see Ld. Eldon C.'s observations, 6 Ves. 626.

The purchase in *Coles* v. *Trecothick,* 9 Ves. 234, was supported upon the ground of a distinct and clear contract with the *cestui que trust,* he having the fullest information, and having the sole management; the trustee being passive as to the latter circumstance. *Fox* v. *Mackreth,* 2 Bro. 400, and affirmed on appeal in *Dom. Proc.* 1791, is considered as a leading case in support of the rule, that a trustee for sale shall not take advantage of his situation so as to purchase for his own benefit.

To set aside such a purchase, it is not incumbent upon the party to show that the trustee has made an advantage, 8 Ves. 348; but it is in the choice of the *cestui que trusts* to judge for themselves whether they will take back the property or not, 6. Ves. 627; so that in such a case the trustee can never be allowed to retain an advantage, but may suffer a loss. *Lister* v. *Lister,* 6 Ves. 631.

This doctrine is not confined to trustees, but extends to assignees under commissions of bankrupt, solicitors, agents, and in short all persons having a confidential character. *Ex parte Lacey,* 6 Ves. 625.—*Ex parte Hughes* and *Ex parte Lyon.* ib. 617.—*Ex parte Attwood* and *Owen* v. *Foulkes,* cited ib. 630, note b.—*Ex parte James,* 8 Ves. 337. See *M'Enzie* v. *York Buildings Company, Dom. Proc.* cited 6 Ves. 630. The principle being as above, it seems that the sale being by auction makes no difference. See 8 Ves. 348.—*Nelthorpe* v. *Pennyman,* 14 Ves. 517. " Belt's Supp. 10, 11.