## MARTIN *v.* WYNCOOP and Others.

An administrator is a trustee of the real as well as the personal estate of his decedent; and as such, he cannot purchase such real estate at a sheriff's sale, for himself or for another, even though it be sold on an execution in his favor levied before he assumed the trust, and although it may appear that he used efforts to make the property sell for the best price possible.

And the *cestui que trust* may have such a sale set aside, without showing fraud, or that the administrator made an advantageous bargain.

APPEAL from the *Marion* Circuit Court.

WORDEN, J.—*Daniel B. Fatout* filed his bill in chancery (under the old practice) against the heirs of *Austin W. Morris*, the heirs of *Eben Pierce*, deceased, and the appellant, *Martin*, to remove a cloud from the title to certain lands which *Morris* had, in his lifetime, sold to *Fatout*. The heirs of *Pierce* (*Wyncoop et al.*) filed a counterclaim or cross-bill against all the other parties, and set up a claim to a tract of land which *Morris* had sold to *Martin*. The heirs of *Pierce* allege that the sale of the land by *Morris* to *Martin* was in violation of the trust reposed in *Morris*, as administrator of the estate of *Pierce*. The correctness of the ruling of the Court in reference to the piece of land last mentioned is the only point before us.

The facts, so far as it is necessary to state them in order to an understanding of the question presented, are as follows, viz.:

*Pierce*, in his lifetime, was the owner of the land in controversy. *Morris* held certain judgments against *Pierce*,

on which executions had been issued and levied upon the lands in the lifetime of *Pierce;* and while the lands were thus held by the levy, *Pierce* died, but writs of *venditioni exponas* issued, on which the land was finally sold. Before the land was sold, *Morris* was appointed administrator of *Pierce's* estate. On the sale of the lands, *Morris* became the purchaser, received the sheriff's deed, and afterwards conveyed the land to *Martin* for the same amount he had bid at the sale. *Martin* had notice that *Morris* was the administrator of the estate at the time he bought the land at the sheriff's sale. There is testimony having a tendency to show that *Morris* bid off the land for *Martin*, and there is no proof of any actual fraud or unfairness in the sale, but on the contrary, *Morris* appears to have tried to induce competition, and wished, as the witness says, to have it sell for the highest price. *Martin* has made lasting and valuable improvements on the premises, to the value of 100 dollars.

The Court below, having found substantially the foregoing facts, ordered the conveyances from the sheriff to *Morris*, and from *Morris* to *Martin*, to be set aside, on the following terms and conditions, viz.: The property was ordered to be again offered for sale at a sum equal to *Morris's* bid with the interest thereon, and the improvements made on the premises by *Martin*, amounting to 1,479 dollars, 27 cents, to which were to be added the costs of the suit, and the costs of the sale to be made under the order, the total of which was to be the least sum for which the premises were to be offered; and if the premises failed to sell for more than that sum, the sale aforesaid and conveyance were to be in all things confirmed; but if the land should sell for more, the money was to be brought into Court, to be distributed as might thereafter be ordered.

*Martin* appeals from the order of the Court, and assigns several errors; but as no question is alluded to in the brief of counsel, except as to whether the facts warranted such an order, we of course shall not examine any other question.

It is claimed that this case does not fall within the prin-

May Term,
1859.

MARTIN
v.
WYNCOOP.

ciple that excludes a trustee from purchasing, for his own benefit, the property embraced in the trust.

If the principle extended to no other sales than those made by the trustee himself, whether under an order of Court or otherwise, where his character of vendor and purchaser, at the same time, would be utterly inconsistent —his duty as vendor being to sell the property for the highest price that could be obtained, and his interest as purchaser to get it for the lowest—the case would clearly be with the appellant, as he, or rather his vendor, did not purchase at his own sale, but at a judicial sale made by the sheriff.

But the principle is broader in its application, and extends to all sales of the trust property, whether made by the trustee himself under his powers as trustee, or under an adverse proceeding. As a general trustee of the subject, it is his duty to make it bring as much as possible, at any sale that may take place; and, therefore, he cannot put himself in a situation where it becomes his interest that the property should bring the least sum.

Thus, in *Campbell* v. *Johnson*, 1 Sandf. 148, the testator appointed two persons his executors, and the guardians of his children, and devised all his estate to them in trust, to sell for the benefit of his heirs. The land was subject to mortgages given by the testator, and under one of them it was sold, and one of the executors purchased. The Court held that the sale must be set aside on the application of the heirs, upon the ground that in both capacities, as trustees to sell, and guardians of the children, the executors had a duty to perform in regard to the property, which rendered it inequitable for either of them to become a purchaser. See, also, *Bell* v. *Webb*, 2 Gill, 164; *Evertson* v. *Tappen*, 5 Johns. Ch. 498; *Toney* v. *The Bank of Orleans*, 9 Paige, 650; *Van Epps* v. *Van Epps*, id. 238.

The fact that the land was bid off for *Martin* by *Morris*, if such be the fact, cannot alter the case, for the principle extends to purchases by the trustee for another. *Brackenridge* v. *Holland*, 2 Blackf. 377.—*Ex parte Bennett*, 10 Ves. 381. See, also, *Gregory* v. *Gregory*, Coop. 204.

In order that the *cestui que trust* may have such sale set aside at his option, it is not necessary that he should show fraud, or that the trustee has made an advantageous bar-  gain.   Judge STORY says: "The principle applies, how- ever innocent the purchase may be in a given case.   *   * The *cestui que trust* is not bound to prove, nor is the Court bound to decide, that the trustee has made a bargain ad- vantageous to himself.   The fact may be so, and yet the party not have it in his power distinctly and clearly to show it.   There may be fraud, and yet the party not be able to show it.   It is to guard against this uncertainty and hazard of abuse, and to remove the trustee from temptation, that the rule does and will permit the *cestui que trust* to come in at his option, and, without showing essential injury, to insist upon having the experiment of another sale."   1 Story's Eq. Juris., § 322.

The case of *Fox* v. *Mackreth,* 2 Bro. Ch. 400, and *Da- voue* v. *Fanning,* 2 Johns. Ch. 252, may be cited as leading cases on this subject.

But it is claimed that as *Morris* had, in the lifetime of *Pierce,* levied upon the land, whereby he might, without reviving his judgments, proceed to sell on a *venditioni ex- ponas,* and purchase in the land on such sale, his rights in that respect are not at all affected by his taking out letters of administration on the estate.

We think the foregoing authorities establish the propo- sition that a trustee cannot, as a general rule, purchase the trust property, either at his own, or any other sale thereof, and that the principle applies to this case, if the real estate of a decedent is to be considered trust property within the meaning of the rule, and if the rule applies to a sale on execution in favor of the trustee.

There is much plausibility in the proposition that the real estate of a decedent is not within the trust committed to an administrator, unless he proceeds, in the statutory mode, to make it assets for the payment of debts.   The personal estate is the primary fund out of which debts are to be paid, and the administrator has nothing to do with the real estate, unless, for the want of sufficient personalty,

it become necessary to convert it into assets. It descends immediately to the heir, or goes to the devisee, subject only to the rights of creditors.

There is an authority, however, that settles both of the points above suggested against the purchaser. *Rodgers* v. *Rodgers*, Hop. 515.

In this case, an executor had purchased the lands of the testator on a judgment of his own against the testator.

The chancellor, after stating the case, proceeds as follows:

"When *Halsey Rodgers* assumed the office of executor, he took upon himself all the duties of that trust, and he voluntarily became a trustee of all persons interested in the estate of *Thomas Rodgers*. * * * In this situation, *Halsey Rodgers* was both debtor and creditor. He was debtor, as executor, to all the creditors of *Thomas Rodgers;* he was himself a creditor by the judgment, and he was thus, in respect to his own demand upon the judgment, debtor as executor, and creditor in his own right. If the personal estate of *Thomas Rodgers* had been sufficient to pay his debts, it would have been the duty of *Halsey Rodgers*, as executor, to pay the debt to himself from the personal fund. He could not have been allowed, in the exercise of his right as creditor by judgment, to levy the debt to himself from the lands of the testator, while it was his duty as executor to discharge the debt from the personal estate. Such an exercise of his right as creditor would have been subversive of his duty as executor; and it is clear, that in such a case, his right as a creditor must have yielded to the duties of the trust which he had assumed. * * In this case, it is said that *Halsey Rodgers*, though a trustee of the personal estate of the testator, is not a trustee of the lands. The personal estate being insufficient to pay the debts of the testator, it was necessary that the lands, or some of them, should be sold for the satisfaction of the creditors. All persons interested in the lands were, therefore, interested *that the* personal effects should be fully applied to the payment of debts. It was the duty of the executor to apply the personal estate in

May Term,
1859.

MARTIN
v.
WYNCOOP.

payment of debts; and next, and equally, it was his duty to resort to the lands, in the manner prescribed by law, to raise a sum sufficient to pay the debts which might remain unpaid from the personal fund. When the personal fund is deficient, and there are lands of the deceased debtor, the executor or administrator is bound to apply to the surrogate for an order to sell the lands. Such an application is, by our statute, made the absolute duty of an executor or administrator; and by this simple and excellent method, all the creditors of a deceased debtor may obtain satisfaction from his real estate, without litigation or any hostile proceeding. The executor or administrator is, by our law, made the agent for this object. It is his duty to institute such proceeding, and prosecute it to effect, and this measure is often the most important duty of his office. In this case, the personal estate of *Thomas Rodgers* was the primary subject of the trust of this executor; and the land being the secondary fund for the payment of debts, was the secondary subject of the trust. This executor was the trustee for the payment of debts from both funds; and his trust embraced an administration not only of the personal estate, but also of the lands so far as the lands were necessary for the payment of debts. As executor, he had no estate in the lands; but as executor, he had a power over the lands, and a duty concerning them, which, for every purpose of justice, constituted a trust, and him a trustee, of those lands. Being thus, in substance, a trustee of the lands, he was bound so to administer them and apply them to the payment of debts, that he should not gain, and those interested should not lose, by his acts; and as a trustee, he is subject to the principle of equity which gives to those who are beneficially interested, the option to affirm or reject the purchase thus made by the trustee. * * * If *Halsey Rodgers* had not accepted the trust of executor, he would have been at full liberty to pursue all his remedies for the satisfaction of his judgment. * * * But when he accepted a trust which imposed on him the duty of taking every legal and prudent measure to pay the

debts of *Thomas Rodgers* from the personal and real estate, he was no longer at liberty to exert his rights as creditor in opposition to his duties as executor. He continued a creditor, but he relinquished any right of a creditor which might interfere with his duty as trustee. So far as the rights of *Halsey Rodgers* as a creditor, and his duties as a trustee, were in conflict with each other, his rights yielded to his duties."

The property had been sold for less than its value, but the entire reasoning of the Court shows that the same result would have followed had it been otherwise. The sale was set aside, and on appeal to the Court of errors, the decree of the chancellor was affirmed. 3 Wend. 504.

On appeal, it was said by SAVAGE, C. J., "There is no evidence of any actual fraud in the sale, but the propriety or impropriety of such a sale must depend upon the general question, whether a trustee can be permitted, under any circumstances, to sell the trust property, and become a purchaser at such sale." After citing the case of *Davoue* v. *Fanning, supra*, he holds that the principle is applicable to the case then before the Court, holding the executor a trustee of the real estate, and remarking that, "had the appellant declined the character of executor, he might have pursued his remedy under his judgment and execution; but he should not be permitted, as creditor, to sacrifice, for his own benefit, that very property which his duty, as executor, required him to protect and to dispose of to the best advantage of those entitled to the estate."

We have been thus liberal in quoting the remarks of the Court, because the case is directly in point, and the reasoning of the Court, in all essential particulars, is applicable to the case at bar. We are inclined to follow the *New York* doctrine, and hold that the purchase by *Morris*, under the circumstances, should be set aside on the terms, and in the manner, specified in the order made below. We are not clear that the costs of the suit and of making the sale ordered, should have been included in the sum at which the property was to be reöffered; but upon this

point we make no decision, as the appellant cannot complain of that, even if it were wrong, for it was for his benefit.

*Per Curiam.*—The judgment is affirmed with costs.

*L. Barbour* and *A. G. Porter*, for the appellant.