ROCKFORD WATCH COMPANY, APPELLANT, V. WILLIAM C. MANIFOLD ET AL., APPELLEES, AND CITIZENS BANK OF WYMORE ET AL., APPELLANTS.

FILED APRIL 26, 1893.   No. 4716.

1. **Chattel Mortgages:** AGREEMENT OF MORTGAGEES AS TO PRIORITY: FRAUD. A junior mortgagee of chattels, who agrees with the senior mortgagee and the mortgagor that the goods mortgaged may be sold and the proceeds applied to the payment of the mortgages in the order of their priority as disclosed by the records, cannot, after such sale and appropriation of the proceeds, maintain an action to avoid the senior mortgage for fraud in its inception without proof that the facts constituting the fraud were discovered after the agreement and sale.

2. ———: ACTION TO AVOID FOR FRAUD: PLEADING. In an action to avoid a conveyance or mortgage for fraud the facts constitut-

54

ing the fraud must be specifically pleaded; a general allegation of fraud is insufficient.

3. ———: FORECLOSURE: AN AGENT FOR THE PURPOSE OF SELLING GOODS will not be permitted to sell to himself, even though the sale be public, and no actual fraud appear. In case he do so, he will be required to account to his principals for any profit he may have realized.

4. ———: ———: PLEADINGS: DECREE: REVIEW. The findings and judgment in a case must be based upon the pleadings. A decree in an action between a mortgagor and certain mortgagees of chattels, whereby a mortgage not attacked by the pleadings, and the holder whereof is not a party to the action, is declared void, is erroneous.

5. ———: ———: UNLAWFUL SALE: RIGHTS OF UNSECURED CREDITORS: CONVERSION. Unsecured creditors of a mortgagor of chattels are entitled to have the mortgages foreclosed as required by law, and a sale otherwise than as the law provides, although in accordance with an agreement of the mortgagor and mortgagees, is no protection to those participating in the proceeds of the sale. They are liable to account to such creditors for the value of the goods, less the valid liens thereon.

6. ———: LIEN UPON STOCK OF MERCHANDISE: GOODS SUBSEQUENTLY PURCHASED. A mortgage upon a stock of merchandise, under that general description, attaches only to such merchandise as was in the stock when the mortgage was executed, and not to any afterwards purchased.

APPEAL from the district court of Gage county. Heard below before APPELGET, J.

C. S. Otis and E. O. Kretsinger, for appellant Rockford Watch Company.

A. D. McCandless, for appellant Citizens Bank of Wymore.

Griggs, Rinaker & Bibb, for appellant Baldwin & Co.

T. F. Burke, for appellants J. A. Norton & Son.

Hazlett & Le Hane, for appellee O. P. Newbranch.

Winter & Kauffman, for appellees Max Meyer & Bro.

IRVINE, C.

William Manifold and Charles B. Heistand were engaged in the jewelry business in Wymore, and on the 17th day of June, 1889, executed a chattel mortgage upon their stock of merchandise, tools, and fixtures in favor of the Citizens Bank of Wymore, to secure a note of $600. This mortgage was in the ordinary form, and was filed for record on the 18th day of June, 1889. The mortgagors were, however, permitted to remain in possession and to deal with the stock of goods mortgaged in the ordinary course of business until February, 1890. On the 23d day of February, according to the parol evidence, chattel mortgages were executed bearing date the 24th day of February, and recorded on that date in favor of the following persons, and in the order stated, for divers amounts: N. G. Levinson & Co., William Heistand, Max Meyer & Bro., Baldwin & Co., and J. A. Norton & Son. At about this time the defendant Newbranch took possession of the stock of goods, tools, and fixtures on behalf of the Citizens Bank and proceeded to advertise the same for sale. On the 29th day of March a public sale was had of the goods. Prior thereto, however, an agreement in writing was entered into on behalf of Levinson & Co., Baldwin & Co., Max Meyer & Bro., and the Citizens Bank, by their respective attorneys, and also by Manifold & Heistand, and by William Heistand, through C. B. Heistand, whereby it was agreed among them that the entire stock of goods and fixtures conveyed to the different mortgagees should be sold under the advertisement of the Citizens Bank, and the proceeds paid to said mortgagees in the order of their priority, as shown by the records of the county clerk's office; and that said goods should be sold in bulk. There was also a separate agreement signed for Norton & Son by their attorney, similar to the above, except that it contained no provision for a

sale in bulk. These agreements were handed to New-branch, who, at the time and place advertised, offered the property for sale. After several bids had been received, Newbranch stepped from the chair upon which he stood to, cry the goods, and negotiated a purchase for himself of the Levinson mortgage from the agent of Levinson & Co., who was present. This mortgage was to secure a debt of $345, and was purchased by Newbranch for $275. The sale was then resumed, the bidders thereafter being New-branch and one Bromwell. Newbranch became the pur-chaser. He drew his check for the purchase price, and gave it to the cashier of the First National Bank of Wy-more, who also seems to have been acting for the Citizens Bank in the matter, and the cashier, after deducting the ex-pense of foreclosure, and the amount of the Citizens Bank debt, paid to the agent of Levinson & Co. the amount of its mortgage, and the agent then deducted the $275 which Newbranch had agreed to pay for the mortgage, and paid the balance remaining to Newbranch. There then re-mained of the purchase money $150, which was paid to C. B. Heistand, ostensibly towards the satisfaction of the William Heistand mortgage. Newbranch, a few days after the sale, disposed of the property to Bromwell at a profit of some $275. Some days afterwards the plaintiff ob-tained judgment against Manifold & Heistand upon an ac-count for goods sold, and execution having been returned unsatisfied, commenced this action to declare the mort-gages void and compel an accounting. William Manifold and Charles B. Heistand, the partners who composed the firm doing business as the Citizens Bank, the First Na-tional Bank of Wymore, Newbranch, Baldwin & Co., Norton & Son, and Max Meyer & Bro. were made de-fendants. Cross-petitions were filed by Baldwin & Co. and Norton & Son. Upon trial a decree was entered, es-tablishing the liens of the Citizens Bank, of Levinson & Co., of Baldwin & Co., and of Norton & Son, in the order

named; also finding that the William Heistand mortgage was fraudulent and void, and the Max Meyer & Bro. mortgage paid.    There was also a finding generally in favor of Newbranch, Bromwell, and the First National Bank. The decree ordered the payment by the Citizens Bank of the $150 paid upon the Heistand mortgage to apply upon the Baldwin claim.    The Citizens Bank, Norton & Son, Baldwin & Co., and the plaintiff all appealed.

The appeals of Baldwin & Co. and Norton & Son will be first considered.    Their cross-petitions are substantially alike, and are based upon the allegations that they signed the agreements in regard to the sale of the goods, believing the mortgage of the Citizens Bank a *bona fide* mortgage, but they have since ascertained it to be fraudulent.    The cross-petitions contain no allegations of fraud except that they charge, upon information and belief, that the bank's mortgage "was fraudulent and void."    This is not a sufficient pleading of fraud.    It is too well settled to require any reference to authorities that a general allegation of fraud is insufficient.    The facts constituting the fraud must be specifically pleaded.    Furthermore, the evidence shows that no facts were discovered after signing the agreement, and whatever is now known to these cross-petitioners was known at that time.    Their agreement expressly recognized the validity of the bank's mortgage and provided for its payment, and estops them from now attacking it.

The cross-petitions of these appellants also attack the sale, alleging that Newbranch acted as the agent of all the mortgagees, and while sustaining that relationship bid the property in himself and resold at a profit.    Newbranch denies that he acted as agent for any others than the Citizens Bank, but this denial is, for the most part, merely his own conclusion as to the legal effect of his acts.    There is some contradictory evidence as to certain conversations alleged to have taken place between him and the attorneys for these appellants, but we do not think these conversations very

material. It clearly appears that Newbranch was in possession of the stock of goods on behalf of the Citizens Bank when the agreements above referred to were made; that these agreements came to his notice, and that he proceeded to sell the property, and disposed of the proceeds, with knowledge and with the purpose of complying with these terms of the agreements. If he was not acting under these agreements, he had no authority from any one to dispose of more of the stock than would be sufficient to satisfy the bank's mortgage. Whatever his own understanding may have been, the undisputed evidence as to his acts places him in a fiduciary relationship to all the mortgagees, including the appellants. He not only cried the sale, but he assumed its conduct absolutely, including the care of the property beforehand, the direction of the sale and looking after the proceeds thereof. He did bid the property in for himself, and he did resell after a very few days at a considerable profit. The evidence does not disclose any fraud or even unfairness in his conduct, but such transactions upon the part of an agent are voidable at the option of the principal without regard to the existence of actual fraud. They are voidable not because there *was* fraud, but because there *might be*, and because the law, upon grounds of public policy, will not permit an agent to assume a position where conflicting interests will expose him to the danger of sacrificing his principal to himself. The doctrine extends to all cases of agency with almost the same force as to cases of trusts, and has been applied in every adjudicated case, so far as we are aware, to agents for the purpose of selling goods or land. It has been held to apply to public sales as well as private, and even to an agent empowered to sell at a stipulated price. The principle is well stated in Pomeroy's Equity Jurisprudence, 2d ed., sec. 959, where a vast number of authorities are collated. Among the numerous cases, some of those presenting features similar to those of the

case at bar are as follows: *Davoue v. Fanning*, 2 Johns, Ch. [N. Y.], 252; *Brock v. Rice*, 27 Gratt. [Va.], 812; *Ruckman v. Bergholz*, 37 N. J. L., 437; *Bain v. Brown*, 56 N. Y., 285; *White v. Ward*, 26 Ark., 445; *Newcomb v. Brooks*, 16 W. Va., 32; *Martin v. Wyncoop*, 12 Ind., 266; *Mason v. Martin*, 4 Md., 124; *Brothers v. Brothers*, 7 Ired. Eq. [N. Car.], 150; *Patton v. Thompson*, 2 Jones Eq. [N. Car.], 285. In all such cases the agent will not be permitted to realize for himself a profit, and must account to his principals for all profits realized. The district court erred in not so holding.

The Citizens Bank bases its appeal upon that part of the decree which directs it to pay over the $150 paid upon the Heistand mortgage. In none of the pleadings is the Heistand mortgage attacked, and while the evidence was certainly sufficient to justify the finding of the court that this mortgage was void, such a finding cannot be sustained, as it is irrelevant to any issues in the case. The validity of the Heistand mortgage was not in issue, and William Heistand was not a party to the suit. The finding and judgment of the court in that respect were erroneous.

The plaintiff stands in an attitude different from that of the mortgagees and attacks both the mortgages and the sale. It is unnecessary to refer to the grounds upon which the validity of the bank's mortgage is attacked. We have held that the parties to the agreements in regard to the sale are bound by those agreements. The plaintiff was not a party to them, and had a right to insist that the mortgages should be foreclosed as the law requires. Unless the sale was made in accordance with law it amounted to a conversion of the goods. So far as the bank is concerned, the sale was properly advertised and publicly held, but it had no right to proceed beyond the satisfaction of its own mortgage. Moreover, the bank's mortgage was upon the stock of goods as it existed at the time the mortgage was given. It did not, and could not, attach to after-acquired property, and

did not, upon its face, purport so to do. The plaintiff offered to prove that the bank seized and sold goods purchased by the mortgagors from the plaintiff after the mortgage was given. This evidence was excluded, and in this we think the court erred. It is probable that the court's action was based upon the theory that the other mortgages did cover the property acquired by the firm in the period intervening after the execution of the mortgage to the bank. But there was no valid foreclosure of these later mortgages; and as to all property not covered by the bank's mortgage, and as to all property covered by that mortgage beyond such as would be sufficient to discharge the debt secured thereby, the plaintiff has the right to insist upon foreclosure by junior mortgagees in accordance with law and to hold the recipients of the proceeds of an unlawful sale responsible for the value of the goods.

In view of the conclusion reached, no decree can be rendered in this court which we can be assured will do justice to the parties. The case is therefore reversed and remanded for further proceedings in accordance with this opinion.

REVERSED AND REMANDED.

THE other commissioners concur.