## HOLMAN v. RYON et al.

### No. 5265.

Court of Appeals of District of Columbia.

Argued Jan. 6, 1932.

Decided Feb. 1, 1932.

Olive B. Lacy, of Washington, D. C., for appellant.

Louis Ottenberg, of Washington, D. C., for appellees.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, and GRONER, Associate Justices.

ROBB, Associate Justice.

Appeal from a decree in the Supreme Court of the District dismissing plaintiff's bill to set aside as fraudulent a sale under a power of sale in a deed of trust; or in the alternative that plaintiff have personal judgment against the defendants based upon the actual value of the property as of the date of the sale.

The bill was filed on February 27, 1929, and its averments so far as material here are as follows: The defendants N. E. Ryon and E. A. Ryon are sued as trustees. The defendant Mary Shipley Ryon is the wife of N. E. Ryon and is sued in her own right.

Defendant Josephine L. Buechler is sued in her own right and as beneficiary secured by the deed of trust.

On June 7, 1926, plaintiff, through N. E. Ryon Co. (Inc.), N. E. Ryon, president, borrowed from defendant Josephine L. Buechler $750, for which plaintiff gave his promissory note, payable three years after date, with interest at 7 per cent. per annum, payable semiannually. On the same date, by a deed of trust, plaintiff conveyed property known as No. 1626 Kraemer street Northeast, to N. E. Ryon and E. A. Ryon, as trustees, to secure payment of the loan and interest. The property was otherwise unincumbered. The assessed value of the property was $770. It then was and is now worth $2,250. Its rental value was and is from $20 to $25 per month.

On September 3, 1927, default having been made in the payment of one installment of interest on the note (about $25), plaintiff was notified by N. E. Ryon Company, through defendant N. E. Ryon, that the "holder of the note" requested foreclosure proceedings to be started. A newspaper clipping of an advertisement of the property for sale at auction on September 13, 1927, signed by N. E. Ryon and E. A. Ryon, as trustees, was inclosed with the letter. On September 13, 1927, the property was offered for sale at public auction by the trustees, and bid in by defendant Mary Shipley Ryon for $700. On the same date, by a trustees' deed, the property was conveyed to the purchaser. At the time of the sale, plaintiff was ill and unable to be present and unable to get any one to represent him. He relied upon the trustees to protect his interests at the sale. The interests of the purchaser, Mary Shipley Ryon, as wife of one of the trustees were in conflict with plaintiff's interests as mortgagor. The sale of the property to the wife of the trustee for an amount approximately, to wit, less than one-third of its market value was a fraud upon plaintiff. The act of the trustees in conveying the property to the wife of the trustee, N. E. Ryon, was wrongful and fraudulent, and in violation of their obligation as trustees and the rights of plaintiff as mortgagor. The trustees confederated with the wife to defraud plaintiff.

Plaintiff believes and avers that defendant N. E. Ryon was in fact the real purchaser of the property at the sale and that he purchased the same wrongfully and fraudulently in his wife's name for his own use and benefit, in violation of his obligation as trustee, as aforesaid, and plaintiff's rights as mortgagor in the amount above set out.

Plaintiff tenders himself as ready, able, and willing to do equity in accordance with the decree of the court.

The prayers of the bill are that the sale be set aside; that plaintiff be declared the owner of the property; that Mary Shipley Ryon be required to reconvey the property to him; that defendants N. E. Ryon and Mary Shipley Ryon account to plaintiff for all rents and profits received by them or for the rental value of the property and all rents and profits received therefrom since the foreclosure sale; and that the commissions on the sale charged by defendants N. E. Ryon and E. A. Ryon, as trustees, be forfeited. Or in the alternative, that plaintiff have personal judgment against defendants N. E. Ryon and Mary Shipley Ryon based upon the real value of the property as of the date of sale.

On March 27, 1929, the bill was amended so as to show that on that day the plaintiff tendered to the defendants, through their counsel, the principal of the deed of trust note, with interest to date, in cash, in the amount of $871.13, and requested a deed to the property. Tender was refused. Plaintiff tenders the full amount of principal and interest due on the note, and stands ready to pay the same.

In his answer, under oath, N. E. Ryon alleged that he was without knowledge as to the actual market value of the property or as to its rental value; that he had "no knowledge of the reliance placed upon the said trustees by the plaintiff to protect his interests at the said sale." Denied that the interests of the purchaser, Mary Shipley Ryon, as wife of N. E. Ryon, trustee, were in conflict with plaintiff's interests as mortgagor. Alleged that in the purchase of the property Mary Shipley Ryon acted independently of her husband; that the property was sold to the highest bidder after full opportunity to bid was given to those present; that the property was purchased by Mary Shipley Ryon as her sole and separate property *"for the reason that she had out of her sole and separate estate advanced the money for the loan to the plaintiff herein,* and the payment of which was secured by the deed of trust under which said foreclosure sale was had." (Italics ours.)

The answer of Mary Shipley Ryon, likewise under oath, is in substantially the same terms as that of her husband. She repeats the averment *"that she had out of her sole and separate estate advanced the money for the loan to the plaintiff."* (Italics ours.)

In her sworn answer, E. A. Ryon, after admitting that she was named as a trustee in the deed of trust and that the property was sold at auction and purchased by Mary Shipley Ryon, disclaimed any "information or knowledge as to all other allegations contained in said bill of complaint."

The defendant Buechler in her answer, under oath, admits that she is the payee of the deed of trust note, and avers that the note "was transferred to the defendant Mary Shipley Ryon before default in the payment of said note."

At the trial, plaintiff testified that he knew N. E. Ryon, but did not know the defendants E. A. Ryon, Mary Shipley Ryon, or Josephine L. Buechler; that he was not present at the sale on account of illness; was unable to get anyone to represent him at the sale, "and depended upon the trustees to protect his interests." The lot covered by the deed of trust was improved by a two-story frame house. At the time he executed the deed of trust, N. E. Ryon did not tell him that Josephine L. Buechler was a straw mortgagee, nor that she was related to him, nor that his wife was lending the money; he had no reason to believe that and did not know it. He would not have named him as trustee if he had known it. He asked Mr. Ryon if everything was all right, and he told him, yes, in so far as his interests were concerned everything was all right. That he knew the purchaser at the sale was Mary Shipley Ryon, but did not know she was the wife of N. E. Ryon.

William E. Foster, in the real estate business for ten years, testified for plaintiff that in his opinion the fair market value of the property in question in September, 1927, was $1,750.

William Johnson, for the plaintiff, testified that he had rented the property from N. E. Ryon since January 1, 1928, and paid him $20 a month; that it was in poor condition when he rented it; had not been painted or papered, nor had the woodwork been repaired, nor had any necessary repairs of any kind been put upon it since he had lived in it.

Plaintiff further showed that on July 13, 1928, the Columbia Building Association loaned Mary Shipley Ryon $1,200, secured by a deed of trust upon the property. Plaintiff then rested.

For the defendants, N. E. Ryon testified that he had been in the real estate business for the past 30 years; that plaintiff came to him for a loan, "and he (Ryon) finally arranged for the $750 loan *through* defendant *Josephine L. Buechler.* That he was indebted to his wife in the amount of $1,000; that he was accustomed to paying for the expenses of the home and that his wife advanced $1,000 for repairs to their home, and *he repaid her by having transferred to her the said note for $750;* that after she purchased the property at the foreclosure sale, the N. E. Ryon Company had taken charge of it for her. That about $300 had been spent by Mrs. Ryon on the property since her purchase at the foreclosure sale in the way of improvements; that the value of the property at the time of the sale, in his opinion, was from $1,300 to $1,500." (Italics ours.)

On cross-examination he admitted that Josephine L. Buechler was his sister, and that the cotrustee E. A. Ryon was also his sister; that he is the principal stockholder of the N. E. Ryon Co. (Inc.), and president of the company; "that he was not asked, and did not tell plaintiff Josephine L. Buechler was a straw mortgagee, or that she was his sister. That he was not asked, and did not tell plaintiff at the time he executed the deed of trust, or prior thereto, that his wife was lending the money. That his wife was present at the sale and bid the property in herself; that it was not necessary to pay a deposit or anything on account of the purchase price because it was bid in for less than the loan by the holder of the trust." That his company handled the property for his wife; that he did not have any canceled checks with him to show this; nor did he have any of the books of the company with him in court to show the account in her name; that he was not certain of the total amount of rent received; that it was something over $400. After stating that $300 had been spent in repairing the property, he finally admitted that "the total must have been $150 to $200, instead of $300." He had no canceled checks to show whose checks paid for the repairs. "That he did not know whether or not the records in the recorder of deeds' office showed that he used his wife's name constantly in his business transactions; that he would not deny that he so used it; that he used his wife's name in his business, but only when she had an interest."

The auctioneer who conducted the sale testified that it was fairly conducted; that Mrs. Ryon "was the highest bidder."

A Mr. Craft, a real estate operator, testified for the defendants that the value of the property at the time of the sale was about $1,500.

Mrs. Ryon testified *"that she had advanced the money for the loan on the Kraem*

*er St. property out of her separate funds."* Later she stated that Mr. Ryon always paid all the expenses of their home; that they had been making repairs to the house,. "and that she had advanced out of her separate estate $1,000 to cover the repairs; that he had repaid her by having transferred to her the plaintiff's note for $750 secured by the trust on the Kraemer. St. house; * * * That she bid the property in at $700; *that there were no other bidders."*

On cross-examination, she stated "that her husband had had transferred the note of plaintiff for $750 to her on account of his indebtedness to her of $1,000; that she did not have the note with her to exhibit to the court. That she did not have any canceled checks with her to exhibit to the court to show whose checks paid the mortgage interest on the deed of trust she had placed on the property."

█ It is a wholesome doctrine, based upon reasons of public policy, that a trustee may not purchase or deal in trust property for his own benefit or on his own behalf, directly or indirectly. Michoud v. Girod, 4 How. 503, 11 L. Ed. 1076; Hammond v. Hopkins, 143 U. S. 224, 251, 12 S. Ct. 418, 36 L. Ed. 134; Magruder v. Drury, 235 U. S. 106, 119, 35 S. Ct. 77, 59 L. Ed. 151. "So jealous is the law of dealings of this character by persons holding confidential relations to each other that the cestui que trust may avoid the transaction, even though the sale was without fraud, the property sold for its full value, and no actual injury to his interests be proven. It does not follow, however, that the sale is absolutely void in the sense that the purchaser takes no title which he can convey to a third person,—a bona fide purchaser without notice; nor that the cestui que trust may not, upon notice of all the facts, ratify and affirm the sale by his acquiescence or silent approval." Hoyt v. Latham, 143 U. S. 553, 566, 12 S. Ct. 568, 572, 36 L. Ed. 259; Hammond v. Hopkins, 143 U. S. 224, 251, 12 S. Ct. 418, 36 L. Ed. 134.

█ A trustee named in deed of trust to secure a loan sustains a fiduciary relationship to the debtor as well as to the creditor. Church v. Holmes, 60 App. D. C. 27, 46 F. (2d) 608. In the event it becomes necessary to sell the trust property, it is his duty not only to conform to the legal requirements, but to see that the sale is conducted fairly, to the end that a reasonable amount may be realized therefrom. "Where there has been misconduct on the part of the trustees affecting the fairness of the sale, or where they have violated the terms of the trust in any material particular, or where the sale has been upon such inadequate consideration as to shock the conscience and of itself suggest fraud or misconduct, equity will interpose and set aside the sale upon the application of the mortgagor and sometimes of the mortgagee." Anderson v. White, 2 App. D. C. 408, 418. Such sales usually take place after short notice, there is no right of redemption, and it is common knowledge that trustees, in the conscientious performance of their duty, will postpone a sale if conditions are so unfavorable as to preclude the possibility of a reasonable bid for the property. A trustee, therefore, should scrupulously avoid placing himself in a position where his interests might conflict with the interests of those whom he represents.

█ In the light of the foregoing, we now discuss the facts of the present case. Plaintiff at the time of the execution of the deed of trust supposed he was borrowing the money from Josephine L. Buechler, when in fact he was borrowing it from the defendant N. E. Ryon. In their sworn answers to the bill, both N. E. Ryon and his wife, Mary Shipley Ryon, alleged that she had advanced the money for the loan. Their testimony was inconsistent with this allegation, for they testified that Mr. Ryon was indebted to Mrs. Ryon in the sum of $1,000 which she had advanced for repairs to their home, and that "he repaid her by having transferred to her the said note for $750." Neither stated when this transfer was made, and the note was not produced. The only statement we have on that subject is the answer of Josephine L. Buechler, who merely states that the "note was transferred to the defendant Mary Shipley Ryon before default in the payment of said note." It is perfectly apparent, therefore, that at the time of the execution of the deed of trust Ryon was the real creditor.

█ Whether he continued to be, remains to be considered. According to his testimony, he had been in the real estate business for 30 years. He had loaned $750 on plaintiff's property, must have been familiar with it, and yet he stated in his answer that he did not know its market value. This statement was disingenuous, to say the least, for in his testimony he stated the value to have been from $1,300 to $1,500. Ryon not only failed to tell plaintiff that Josephine L. Buechler was a straw mortgagee, but also failed to disclose that he (Ryon) was the actual lender of the money. He knew or should have known that plaintiff was entitled to the information, and that to suppress it and secure his own

appointment as a trustee was a badge of fraud. His cotrustee was his sister, and the evidence leaves no room for doubt that he was the dominating factor throughout. Ryon was a fiduciary, and on his own evidence placed himself in a position where his interests and those of the plaintiff might conflict. In such circumstances, the burden was on him to prove good faith. Overholt v. Matthews, 48 App. D. C. 482, 492; Goodrum v. Clement, 51 App. D. C. 184, 189, 277 F. 586; Crocheron v. Savage, 75 N. J. Eq. 589, 596, 73 A. 33, 23 L. R. A. (N. S.) 679; Smith v. Moore, 142 N. C. 277, 295, 55 S. E. 275, 7 L. R. A. (N. S.) 684; Dent v. Ferguson, 132 U. S. 50, 61, 10 S. Ct. 13, 33 L. Ed. 242. In view of the conflict between the sworn answers of Ryon and his wife and their testimony, as well as their failure to introduce material evidence in their possession, we think the conclusion entirely justified that Ryon continued to be the actual owner of the note. In other words, that the alleged transfer of the note to Mrs. Ryon and her alleged purchase of the property at the time of the auction sale were a mere subterfuge. But the result would have been the same had we been satisfied that there was a bona fide transfer of the note to Mrs. Ryon prior to the auction sale and that she purchased the property for herself. In Dundas' Appeal, 64 Pa. 325, 332, the court said: "We cannot doubt that a sale by a trustee to his own wife would be set aside on the application of the cestui que trust, not on the ground of coverture, but of her relationship to the trustee. It would be evidence of unfairness quite as much as if the sale were made to the trustee himself, and falls within the spirit of the rule which forbids his own purchase: Hill on Trustees, 535, 536; Lewin on Trusts, 376 to 383; 2 Story's Eq., §§ 1257, 1261, 1265." See, also, Frazier v. Jeakins, 64 Kan. 615, 623, 68 P. 24, 57 L. R. A. 575; Tyler v. Sanborn, 128 Ill. 136, 144, 21 N. E. 193, 4 L. R. A. 218, 15 Am. St. Rep. 97.

Was the plaintiff guilty of laches? It is a familiar rule that the period of delay or neglect necessary to constitute laches varies with the peculiar circumstances of each case, and, unlike the statute of limitations, is not subject to an arbitrary rule. Bradley v. Davidson, 47 App. D. C. 266, 283; Metzger v. Millegan, 48 App. D. C. 156, 159; Chiswell v. Johnston, 55 App. D. C. 3, 7, 299 F. 681; Townsend v. Vanderwerker, 160 U. S. 171, 186, 16 S. Ct. 258, 40 L. Ed. 383; McIntire v. Pryor, 173 U. S. 38, 59, 19 S. Ct. 352, 43 L. Ed. 606. In the present case, plaintiff had confidence in the defendant Ryon. There was a betrayal of that confidence. Until the testimony was taken, plaintiff did not know that Ryon was the real lender of the money —the real mortgagee. He was, therefore, ignorant of Ryon's duplicity until the actual trial of the case. No avenue of information was open to him prior to that time. The parties are all living and, in our view, to close the doors of equity to plaintiff under the circumstances of this case would be placing a premium on fraud.

We come now to the remedy. The Columbia Building Association's loan of $1,200 secured on this property was made without notice and in good faith and must be respected. Hoyt v. Latham, 143 U. S. 553, 566, 12 S. Ct. 568, 36 L. Ed. 259; Hammond v. Hopkins, 143 U. S. 224, 251, 12 S. Ct. 418, 36 L. Ed. 134. The sale therefore may not be set aside. Mrs. Ryon knew that her husband was a fiduciary and must have known that he was betraying his trust. The evidence leaves no room for doubt that she knowingly assisted him in the furtherance of his scheme. Those who thus knowingly confederate with a fiduciary become jointly and severally liable with him for the damages. Jackson v. Smith, 254 U. S. 586, 41 S. Ct. 200, 65 L. Ed. 418.

The decree will be reversed, with costs, and the cause remanded, with directions to the court below to proceed with an accounting and to enter a decree for the plaintiff against the defendants N. E. Ryon and Mary Shipley Ryon, for the damages based upon the actual value of plaintiff's property at the time of sale, plaintiff to have execution as at law.

Reversed.