**In re ESTATE OF Charles H. HINES.**

**Caryn L. HINES, Appellant,**

**v.**

**Marjorie H. BURKE and Tanya B. Hall, Appellees.**

**No. 96–PR–492.**

District of Columbia Court of Appeals.

Submitted Sept. 23, 1997.
Decided July 23, 1998.

---

Barton D. Moorstein, Rockville, was on the brief for appellant.

David A. Vogel, Washington, DC, was on the brief for appellees.

Before TERRY, STEADMAN and RUIZ, Associate Judges.

TERRY, Associate Judge:

This case arises out of the administration of a decedent's estate. Appellant, the court-appointed personal representative, sold the real property of the estate to herself and her brother without court permission and without the knowledge or written consent of the other heirs of the decedent. Two of those heirs, claiming that appellant had acted improperly, brought suit seeking her removal as personal representative, appointment of a successor personal representative, and nullification of the sale of the property. Ruling that appellant had breached her fiduciary duty to the estate and had acted in contravention of stat-

ute and court order, the trial court granted appellees' motion for summary judgment. We affirm.

I

Charles H. Hines died on February 25, 1981. He devised a life estate in the family home on Florida Avenue, N.W., to his wife Ruth, with the remainder to their three children, William Hines, Marjorie Burke, and Sallie Archie, in equal shares, as tenants in common. Mr. Hines' will designated William Hines as the personal representative of the estate, but William [1] never submitted the will to probate. William predeceased his mother and left his one-third interest in the property to his children, Caryn and Gary Hines, in equal shares. Some time thereafter Marjorie assigned one-tenth of her interest to her daughter, Tanya Hall.

On December 30, 1992, following the death of Ruth Hines, Caryn petitioned the court to appoint her as the personal representative of the estate of Charles Hines. The court issued an Abbreviated Probate Order appointing her as personal representative and requiring her to post a general bond in the amount of $1,000. The order also stated that she must file an additional bond, in an amount to be fixed by the court, before accepting assets in excess of that amount. Caryn posted a general bond in the amount of $1,000, which was never increased.

On January 29, 1993, Marjorie, Tanya, Sallie, Caryn, and Gary met at the office of Caryn's attorney to discuss what should be done with the Florida Avenue house. They agreed to retain an appraiser to determine both the fair market value and fair rental value of the property. In addition, they agreed (1) that Marjorie's daughter, Linda Johnson, could live in the house temporarily, on condition that she pay rent and not interfere with efforts to sell the property; [2] (2) that the property would be listed for sale with a Realtor; and (3) that the net proceeds

---

1. Because several of the persons involved in this case have the same last name, we shall generally refer to them in this opinion by their first names.

2. It was understood that Ms. Johnson's occupancy would not create any tenancy in the property, but that she would live on the premises as a licensee.

of the sale would be distributed according to the terms of Charles Hines' will.

A few weeks later, on February 20, the property was appraised at a fair market value of $75,000. The appraiser reported, however, that the property was in need of repair after an extended period of deferred maintenance. When a further inspection revealed more than 100 housing code violations, a contractor was hired to repair and refurbish the property at a cost of about $10,000.

In May 1993 Marjorie told Caryn that she wanted to purchase the house for herself. Accordingly, on May 8 Marjorie and Caryn executed a sales contract which provided, among other things, that the sales price would be $70,000, that the property would be sold "as is," that the seller (the estate) would pay $3,000 toward the closing costs, that the seller could declare the contract null and void if the purchaser (Marjorie) failed to obtain financing within fifteen days, and that settlement was to occur within sixty days after the date of the contract.

By June 1994, Marjorie had not settled on the property,[3] and Caryn had received only one other offer to purchase the property.[4] On June 14 Caryn and her brother Gary executed a contract to purchase the property for themselves. The contract provided, among other things, that the sale price would be $70,000 and the seller (the estate) would pay $3,000 towards closing costs. Caryn signed the contract both as seller (on behalf of the estate) and as purchaser. The contract was silent as to who would pay for repairs to the house, nor did it expressly disclaim any warranties. Caryn admittedly concealed the transaction from Marjorie,[5] failed to obtain court approval for the pur-

chase, and did not obtain consent for the transaction from either Marjorie or Sallie, the other two principal heirs.

On July 1, 1994, following the completion of most of the repairs, the property was reappraised at a fair market value of $84,000. Linda Johnson received a letter from the Realtor on August 22 stating that the property was about to be sold and that she would have to vacate the premises; the letter, however, did not disclose the identity of the purchasers. On September 7 Caryn and Gary closed on the purchase of the property. Some time later, in her Second and Final Account as personal representative, Caryn reported to the court that the estate had received $60,481.15 from the sale of the property to herself and her brother Gary.

Marjorie thereupon filed a complaint seeking Caryn's removal as personal representative and asking the court to set aside the sale of the property; her daughter Tanya later joined as a co-plaintiff. In her answer to the complaint, Caryn admitted that she had sold the house to herself and her brother without the knowledge and consent of either Marjorie or Sallie, each of whom held a one-third interest. She also admitted that she had paid only $70,000, which was $14,000 less than the appraised value of the property at the time of the sale. Along with her answer, Caryn filed a motion seeking *nunc pro tunc* authorization of the sale. The parties then filed cross-motions for summary judgment, and the court granted Marjorie and Tanya's motion in a fourteen-page order reciting the facts as we have summarized them here. Caryn noted this appeal, contending that the

---

3. Marjorie's mortgage application was conditionally approved by a lender, pending receipt of certain information from Caryn. However, because Caryn never provided that information to her, Marjorie was ultimately denied financing.

4. Caryn testified in a deposition that a potential buyer had offered to buy the property for $50,000 and that she had unsuccessfully counter-offered to sell it for $65,000.

5. In her deposition Caryn testified:

> Q. Did you tell Marjorie who was purchasing the property?

> A. No, I did not.
> Q. Did Marjorie ask who was purchasing the property?
> A. Yes, she did.
> Q. What was your answer in response to her question of who was purchasing the property?
> A. I said that I wasn't sure who was purchasing the property.
> Q. In fact, were you sure of who was purchasing the property?
> A. Yes.
> Q. Why did you tell her you were not sure?
> A. I did not want to disclose myself and my brother to her as the purchasers.

trial court erred in setting aside the sale of the property.[6]

## II

Summary judgment is proper when the pleadings, depositions, admissions, affidavits, and other materials before the court "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Super. Ct. Civ. R. 56(c); *see, e.g., Claytor v. Owens–Corning Fiberglas Corp.,* 662 A.2d 1374, 1380–1381 (D.C.1995); *Colbert v. Georgetown University,* 641 A.2d 469, 472 (D.C.1994) (en banc). Material facts are those facts which affect the outcome of a case, and therefore the question of which facts are material is determined by substantive law. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In reviewing a trial court order granting summary judgment, this court must conduct its own independent review of the record and "determine whether there is any unresolved issue of fact relevant to the ruling and also whether the trial court correctly applied the substantive law. . . . In carrying out that task, we must view the record in the light most favorable to the party who opposes summary judgment and thus resolve any doubts as to the existence of a factual dispute against the moving party." *Davis v. Gulf Oil Corp.,* 485 A.2d 160, 164 (D.C.1984) (citation omitted). On the present record, we conclude, as did the trial court, that there are no issues of material fact and that appellees are entitled to judgment as a matter of law.

■ The general rule applicable to this case was stated by the Supreme Court more than 150 years ago:

[T]he law . . . prohibits a party from purchasing on his own account that which his duty or trust requires him to sell on account of another, and from purchasing on account of another that which he sells on his own account. In effect, he is not allowed to unite the two opposite characters of buyer and seller, because his interests, when he is the seller or buyer on his own account, are directly conflicting with those of the person on whose account he buys or sells.

*Michoud v. Girod,* 45 U.S. (4 How.) 503, 555, 11 L.Ed. 1076 (1846). "Confidence in the loyalty and impartiality of a fiduciary is not maintained by one who is at once the seller and the buyer of the subject of sale." *Harlan v. Lee,* 174 Md. 579, 592, 199 A. 862, 869 (1938). Thus it has long been settled in the District of Columbia that a fiduciary may not purchase property which he holds in a fiduciary capacity "for his own benefit or on his own behalf, directly or indirectly," and that the person or persons to whom the fiduciary duty is owed—in this case, the other heirs—may seek to have any such sale voided or nullified. *Holman v. Ryon,* 61 App. D.C. 10, 13, 56 F.2d 307, 310 (1932) (citations omitted); *see Goldman v. Rubin,* 292 Md. 693, 704, 441 A.2d 713, 720 (1982); Uniform Probate Code (U.L.A.) § 3–713 (1983). A personal representative owes a fiduciary duty to the estate and its beneficiaries. D.C.Code § 20–701(a) (1989). This duty is breached when the personal representative's exercise of power over the estate is contrary to law or in violation of a court order. *See* D.C.Code § 20–743 (1989). Moreover, a fiduciary breaches her duty when she fails to disclose material information to the beneficiaries. *See Vicki Bagley Realty, Inc. v. Laufer,* 482 A.2d 359, 365 (D.C.1984) (fiduciary duty "encompasses an obligation to inform the principal of every development affecting his interest" (citing cases)); *Eddy v. Colonial Life Insurance Co.,* 287 U.S.App. D.C. 76, 79, 919 F.2d 747, 750 (1990).

Superior Court Probate Rule 112(b) stated, at all times relevant to this case, that "[u]nless the will authorizes the sale or exchange of real estate and excuses the filing of a bond, or unless all interested persons have waived the filing of a bond . . . sales of real property in the District of Columbia shall be made in accordance with D.C.Code § 20–742(b)."[7] Section 20–742(b), in turn, provid-

---

**6.** Caryn does not challenge the portion of the order removing her as the personal representative and appointing Tanya Hall as the successor personal representative.

**7.** Probate Rule 112 was amended in 1995, but

ed that in order to sell real property of an estate, the personal representative must obtain a court order authorizing the sale. "The Court shall give this order upon certification by the personal representative that the penalty amount of the bond has been expanded by an amount equal to the fair market value of the real estate...." D.C.Code § 20–742(b) (1989).[8] The Abbreviated Probate Order issued in this case also required Caryn, as personal representative, to increase her bond before accepting assets in excess of $1,000. She never did so.

Given the applicable substantive law, the only material facts in this case are (1) Caryn's failure to obtain court approval prior to the sale of the real property, (2) Caryn's failure to increase the amount of her bond before accepting the property as an asset of the estate, and (3) Caryn's failure to inform the other heirs of her sale of the property to herself and her brother. By Caryn's own admissions and deposition testimony, those facts are undisputed.

Appellant argues nevertheless that summary judgment was improper because there is a genuine issue as to whether she and her brother purchased the property for less than its fair market value. We disagree. Although this may be a disputed issue of fact, it is not material because it does not affect the outcome of the case. *See Anderson v. Liberty Lobby,* 477 U.S. at 248, 106 S.Ct. 2505. The law does not differentiate between an unauthorized sale at fair market value and an unauthorized sale below fair market value; both are prohibited. Moreover:

It is a wholesome doctrine, based upon reasons of public policy, that a [fiduciary] may not purchase or deal in [the] property [of the estate] for his own benefit or on his own behalf.... "So jealous is the law of dealings of this character by persons holding confidential relations to each other that the [beneficiary] may avoid the transaction, even though the sale was without fraud, the property sold for its full value, and no actual injury to his interests be proven....."

*Holman v. Ryon, supra,* 61 App. D.C. at 13, 56 F.2d at 310 (citations omitted); *cf. Mosser v. Darrow,* 341 U.S. 267, 272–273, 71 S.Ct. 680, 95 L.Ed. 927 (1951). Therefore, "[i]t is wholly immaterial whether the property brings its full value." *Bassett v. Shoemaker,* 46 N.J.Eq. 538, 542, 20 A. 52, 53 (1890); *accord, Potter v. Smith,* 36 Ind. 231, 239 (1871) ("however innocent the purchase may be in a given case, it is poisonous in its consequences"), quoted in *In re Estate of Garwood,* 272 Ind. 519, 528, 400 N.E.2d 758, 763 (1980). Thus any factual dispute as to the fair market value of the property does not preclude the entry of summary judgment.

Finally, appellant maintains that she is at least entitled "to obtain reimbursement for the substantial monies paid and/or invested in the property after her purchase." The record, however, is inadequate to support this claim, for it contains no information about the amount or extent of any such "monies paid and/or invested in the property." We therefore reject this argument for lack of record support, under well-established principles of appellate review. *See Cobb v. Standard Drug Co.,* 453 A.2d 110, 111 (D.C.1982).

In summary, when a personal representative directly or indirectly purchases on her own account an asset of the estate at a sale which was not authorized by the court or the beneficiaries, the sale is voidable at the behest of any beneficiary. *See, e.g., Michoud v. Girod, supra,* 45 U.S. (4 How.) at 555–558;

---

even in its amended form it still requires a personal representative, when selling the estate's real property, to enlarge his or her bond and to obtain an order from the court "confirming the bond" (unless the bond is waived, which it was not in this case). We note also that the current version of Probate Rule 5(c), which took effect in February 1995, provides:

No fiduciary, without prior court approval, shall purchase for the fiduciary's personal account or for any account in which the fiduciary is personally interested any asset held by the fiduciary....

8. The requirement of a prior court order to sell real estate was deleted by the Probate Reform Act of 1994. *See* D.C.Code § 20–742 (1997). The 1994 Act, however, does not apply to this case. See note 9, *infra.*

*Strates v. Dimotsis,* 110 F.2d 374, 376 (5th Cir.), *cert. denied,* 311 U.S. 666, 61 S.Ct. 24, 85 L.Ed. 427 (1940); *In re Estate of Garwood, supra,* 272 Ind. at 528, 400 N.E.2d at 764; *Smith v. Withey,* 309 Mich. 364, 365, 15 N.W.2d 671, 672 (1944); *Alburger v. Crane,* 5 N.J. 573, 576, 76 A.2d 812, 814 (1950). In this case it is undisputed that appellant purchased real property belonging to the estate without the necessary authorization. Her conflict of interest was obvious and flagrant. We therefore hold that the trial court, after appellees raised an objection to the sale, acted properly in declaring the transaction void. That judgment is accordingly

*Affirmed.*[9]

**9.** On December 28, 1994, the Council of the District of Columbia enacted the Probate Reform Act of 1994, D.C. Act 10–386, 42 D.C. Register 63 (1994), *renumbered as* D.C. Law 10–241, 42 D.C. Register 1640 (1995). Section 4 of that Act, 42 D.C. Register at 84, as amended by section 2 of D.C. Law 11–54, 42 D.C. Register 5854 (1995), provides that it shall be applicable only to estates of decedents who died on or after July 1, 1995. Since Charles Hines died in 1981, the 1994 Act does not affect this case.

Nevertheless, it is worth observing that the 1994 Act is consistent with our holding today. The 1994 Act provides, among other things, that "[a]ny sale ... to the personal representative ... or any other transaction which is affected by a substantial conflict of interest on the part of the personal representative, may be set aside by the court in proceedings initiated by any interested person...." D.C.Code § 20–743.1 (1997).