**In the Matter of ESTATE of Martha Ellen GARWOOD, Deceased.**

No. 280 S 26.

Supreme Court of Indiana.

Feb. 5, 1980.

William S. Spangler, Jon F. Schmoll, Gary, Charles S. Siferd, Monticello, for appellant.

Phillip J. Badell, Rushville, David Dellinger, Monticello, George Wildman, Logansport, for appellee.

ON PETITION TO TRANSFER

PIVARNIK, Justice.

This case comes to us on a petition to transfer from the Fourth District Court of Appeals. Transfer petitioners were the appellants in the Court of Appeals and were heirs of the estate of Martha Ellen Garwood in the trial court.

The last will and testament of Martha Ellen Garwood, Deceased, was admitted to probate in the White Circuit Court on June 5, 1970. On that date, Paul J. Garwood, son of the deceased, and Lawrence Sommers, son-in-law of the deceased, qualified as co-executors of the estate.

On March 8, 1971, Dean Garwood, one of the heirs and also a son of Martha Ellen Garwood, filed a petition to set aside a contract for the sale of estate property. The contract, which had been entered into

on November 10, 1970, purportedly sold the real estate in question in this appeal to co-executor, Paul Garwood. The contract was entered into between Paul Garwood, individually, and Paul Garwood and Lawrence Sommers as co-executors. Thereafter, Paul Garwood filed a motion to dismiss the petition to set aside the contract alleging, *inter alia*, that the sale was not conducted as an estate sale under the terms of the probate code, or by order of the probate court, but was a direct sale by the executors under a testamentary power. Previous to the time that Paul Garwood filed his motion to dismiss the petition to set aside the contract, he moved for appointment of a special administrator and the court appointed one Marvin Stewart. On April 13, 1971, special administrator Marvin Stewart requested authority to convey the subject real estate to Paul Garwood pursuant to the terms of the contract of November 10, 1970, upon receipt of the balance of the purchase price. The property had been appraised at $92,200. The contract provided that Paul Garwood was to pay the sum of $92,001, with a down payment of $501 and further provision for the payment of the balance. Along with the special administrator's request to convey the subject property, was a petition to dismiss the petition of Dean Garwood to set aside the contract of sale. The court, on that same date, entered an order authorizing the special administrator to execute a deed conveying the subject real estate to Paul Garwood upon receipt of the balance of the purchase price. Subsequently, on June 29, 1971, the other co-executor, Lawrence Sommers, moved to expunge the court's order of April 13, 1971, which authorized the special administrator to convey the property, alleging, *inter alia*, that there had been no notice of hearing on the special administrator's petition for authority to convey the property and that no hearing had been held on the petition of Dean Garwood to set aside the contract. The court sustained this petition of co-executor Lawrence Sommers and entered an order expunging its previous order of April 13, 1971.

Some questions were raised as to the authority of Marvin Stewart to serve as special administrator and he resigned as such on December 17, 1971. The court entered an order removing Paul Garwood as executor of the estate on April 25, 1973, due to his adverse interest with respect to the estate which had to do with this contract, the fact that he filed a claim against the estate in December, 1970, and the fact that he filed a contest to the will. On May 16, 1973, the court dismissed the pending petition to set aside the contract for sale of the subject realty. However, on May 30, 1973, the Court entered an order determining that among the issues remaining in the estate was that of the contract of purchase of real estate by Paul J. Garwood. Lawrence Sommers resigned as co-executor on September 7, 1973, and the court appointed Paul D. Ewan as administrator with the will annexed.

On November 28, 1973, Paul Ewan, as successor personal administrator, filed the petition to determine the rights of possession and title to the subject real estate. Paul Garwood filed a motion to dismiss this petition on March 20, 1974. Subsequently, the Honorable Maurice T. Zerface, disqualified himself as judge in this cause and the Honorable Norman L. Kiesling was appointed Special Judge.

On December 13, 1974, Frances Rose Garwood, Dorothy M. Sommers and Zora Fae Swing, filed objections to the November, 1970 contract for sale of the subject realty. Their objections were stated as follows:

"The basis of the objection by these heirs is that the purchase price of said property in the amount of Ninety Two Thousand One and 00/100 ($92,001.00) Dollars is less than the amount of the bid of C. Dean Garwood and for the further grounds that the Contract at the time of its execution was void because a co-executor, Paul J. Garwood, acting in his fiduciary position as co-executor was both a seller and a purchaser under said Contract.

Said heirs further join in the Petition of Paul D. Ewan to Determine the Right

of and Possession and Title to the Real Property previously filed on November 28, 1973.

WHEREFORE, Francis Rose Garwood, Dorothy M. Somers and Zora Fae Swing respectfully request that the Court hold that the Contract of November 10, 1970 be considered null and void and of no legal effect."

As indicated in these objections, these parties are all heirs of Martha Ellen Garwood. On May 14, 1975, the trial court heard the petition and objections filed against the contract in question and made and entered the following judgment:

### "JUDGMENT ON PETITION AND OBJECTIONS TO CONTRACT FOR SALE OF REAL ESTATE

The Court having heretofore entered his findings on Petition and Objections filed against the contract for sale of real estate in this cause, now makes and enters judgment for the respondent, Paul J. Garwood, as follows:

(1) That the contract for the sale and purchase of real estate in this estate entered into on the 10th day of November, 1970, is hereby declared and adjudged to be valid and enforceable under the express contract terms thereof.

(2) Title and possession under the same is adjudged to be vested in the purchaser, Paul J. Garwood, under the express terms of said Contract.

(3) The Special Administrator with the Will annexed is, as a part of this judgment, instructed and ordered to execute, transfer and deliver to the purchaser an administrator's deed concurrently with the delivery of the balance of purchase price within a reasonable time, subject to title and loan requirements or within ―― days, whichever occurs first.

(4) Costs adjudged against Objectors. Judgment so ordered.

/s/ Norman L. Kiesling, Special Judge."

Following this judgment the appellants filed a motion to correct errors which was overruled by the trial court. The appeal was perfected to the Fourth District Court of Appeals and on November 30, 1978, the Court of Appeals rendered a decision, *sua sponte*, dismissing the appeal on the grounds that the trial court's decision was not a final appealable judgment. *In re Estate of Garwood*, (1978) Ind.App., 382 N.E.2d 1020. The Court of Appeals determined that the decision of the trial court was, in fact, an interlocutory order and that, therefore, pursuant to Ind.R.App.P. 3(B) the appellants were required to file the record with the Clerk of the Court of Appeals within thirty (30) days of the ruling on the interlocutory order. Since the appellants treated the decision as a final judgment, their pursuit of remedies by their filing of a motion to correct errors and then proceeding to appeal resulted in extending the time of filing the record beyond thirty days. There was no question raised by the appellants or the appellees in any of the issues presented to the Court of Appeals in their briefs as to the nature of the entry of the trial court being an interlocutory order rather than a final appealable judgment. The Court of Appeals interpreted this entry to be an interlocutory order rather than a final appealable judgment and accordingly dismissed the appeal *sua sponte*. We find that the Court of Appeals was in error in so doing and therefore vacate their opinion.

### I.

■ In dismissing this appeal the Court of Appeals relied on the opinions formerly entered by this Court in *Kiradlo v. Pisula, Administrator*, (1952) 232 Ind. 659, 115 N.E.2d 744, and *Campbell, et al. v. Union Trust Co., et al.*, (1949) 227 Ind. 692, 88 N.E.2d 560. Both of these cases concern authority given by the probate court to the personal representative by interlocutory order for permission to sell real estate in the estate for the purposes of paying debts and to discharge legacies given by the will. *Campbell* had established the general rule, followed by *Kiradlo*, that: "An order for the sale of real estate to make assets for

the payment of liabilities of an estate is an interlocutory order." *Kiradlo, supra,* 232 Ind. at 660, 115 N.E.2d at 744. The sale and order in question here were not made to pay liabilities of the estate. That would be interlocutory to the extent that any sale proposed by the personal representative in compliance with that order would have to be approved by the court. This procedure would give any parties an opportunity to appear before the court and to present arguments and evidence as to the propriety of accepting a particular sale and purchase which would then be followed by a court's order of sale and delivery of deed upon delivery of purchase price, if the court, did, in fact, approve the particular sale. In the case before us, the court heard all the parties on the issue of approving the sale on the contract entered into and approved said sale, ordering a delivery of deed and payment of purchase money. Appellant's argument is well taken that this was a judgment of the court on one issue in the case, which was separate and distinct from the administration of the estate in all other matters, making the order a final and appealable judgment on that issue. We therefore must disagree with the statement in the concurring opinion of the Court of Appeals that: "Our discretion to remand to the trial court under T.R. 54(B) should not be exercised here because the nature of the case makes it one that we could best review on the merits if the entire case were before us," and agreeing with the majority's decision to dismiss the appeal. *In re Garwood,* (1978) Ind.App., 382 N.E.2d 1020 at 1023 (concurring opinion). The difficulty in accepting this conclusion is that the merits of the entire case on this issue are before us. All that remains to be done on this judgment is the perfunctory following of the court's orders in delivering the deed and in paying purchase money. The only things remaining to be done then are to have the proceeds put into the estate and distributed to the heirs on final distribution. The issue of this sale will not come before the trial court again.

In *Richards v. Crown Point Community School Corporation,* (1971) 256 Ind. 347, 351, 269 N.E.2d 5, 6, we considered a ruling by the trial court which provided:

"And now the parties by agreement stipulate that the description of the land contained in plaintiff's complaint in this cause is correct and is the real estate in question. And now the court FINDS AND ADJUDGES that said motion for summary judgment should be sustained and the Court specifically FINDS AND ADJUDGES that the title in fee simple to said real estate is in the Crown Point Community School Corporation in Lake County, and the Court FURTHER FINDS AND ADJUDGES that all matters not pertaining to the title of said real estate are at issue in this cause upon said complaint and the answers files (sic) thereto."

We found in *Richards* that this was a final appealable judgment, as follows: "In the case at hand the separate and distinct issue of who has the fee simple title to the land in question has been decided by the trial court's grant of summary judgment. Being a final order as to the issue ruled upon, the proper procedural approach was appeal to the Appellate Court by way of a motion to correct errors." *Richards, supra,* 256 Ind. 347, 351, 369 N.E.2d 5 at 7. In *Richards,* we cited with approval *Smith v. Zumpfe,* (1940) 217 Ind. 431, 27 N.E.2d 878, in which we found that an order for the sale of real estate with the trial court reserving the jurisdiction to refuse to confirm a transfer made pursuant to the order, was an interlocutory order and not final. The reason for the holding in *Smith, supra,* was the retention of the power in the court to deny validity to the resulting sale. *Smith* further noted that it is the character of the relief granted that determines its classification as final or interlocutory. It had been further stated in *Zumpfe v. Piccadilly Realty Company,* (1938) 214 Ind. 282, 13 N.E.2d 715, that: "A final judgment from which an appeal will lie is one which determines the rights of the parties in the suit, or a distinct and definite branch of it, and reserves no further question or direction for further determination. Applying this test

we are constrained to hold that the order entered by the court in the instant case constituted an appealable final judgment. It amounted to more than a mere direction to the receiver. It adjudicated that appellants were not entitled to an order of sale of the real estate involved under their cross-petition, to which answers had been filed by the parties in interest, thereby forming an issue for the determination [by] the court."

In *Inheritance Tax Div. v. Estate of Calloway*, (1953) 232 Ind. 1 at 8, 110 N.E.2d 903, at 906: "A 'judgment or decree' has been defined as the final determination of the rights of a party in an action; and an 'order' generally, is a direction of the court preliminary and incidental to final determination. The distinction between an order and a judgment is one of finality, and the question is whether the order is a final determination of the rights of [the] parties."

The ministerial acts of receiving the money and delivering the deeds do not affect the finality of the judgment. These are acts performed by the parties pursuant to the judgment of the court. It is apparent that any judgment entered by a court which requires only the execution of it, and leaves nothing further for the court to decide is a final judgment. The trial court, in the case before us, declared that title and possession of the subject real estate was vested in the purchaser-appellee and that the contract of sale entered into on November 10, 1970, was valid and enforceable. The trial court ordered the special administrator to execute transfer and deliver a deed for the real estate upon payment of the balance of the purchase price, reserving no power to itself to deny the validity of the sale of the subject real estate to the appellee. This, then, was the final appealable judgment entered by the trial court on this issue in the cause and the appellants properly pursued their remedies by a motion to correct error and the appeal filed in the Court of Appeals. We, accordingly, will consider the issues on the merits.

## II.

All of the issues raised in this appeal involve the validity of a contract for the sale and purchase of realty in the estate entered into on November 10, 1970, wherein Paul J. Garwood was the purchaser and the co-executors, Paul J. Garwood and Lawrence D. Sommers, were the sellers. These facts are apparent on the face of the instrument since Paul J. Garwood signed the instrument as the purchaser and also signed his name as co-executor-seller along with Lawrence D. Sommers. It is the contention of the appellant-heirs that the contract was therefore void and the trial court should have found it so. The appellants contend further that if it was not void then it was voidable upon application of the heirs and that the record shows throughout this cause that the central issues in settling this estate were the contentions of various heirs and personal representatives and that there were objections to the contract and execution thereof, for various reasons. One reason was that Paul Garwood was a co-executor and acting in his own interest rather than that of the estate. Finally, the appellants contend that the court improperly found that there was sufficient evidence to establish acquiescence in or agreement to the sale by the heirs since there was no evidence whatsoever to show a family settlement or family agreement had been reached pursuant to the 1953 probate code, which specifically sets forth the elements necessary to establish such agreement or settlement. Appellant further claims that the personal representatives acted under authority given by the will.

The question of the validity of the sale of estate property by the personal representative to himself was decided by this Court as early as 1859 in *Martin v. Wyncoop*, 12 Ind. 266. Therein, one Morris, as administrator of the estate of Pierce, sold certain estate property to himself. Morris then sold the property to Martin. There was no testimony of any fraud or unfairness in the sale from Morris as executor to Morris individually as purchaser. On the contrary, the proof was that Morris tried to induce competition and wanted to sell the estate prop-

erty for the highest price. The trial court ordered the conveyance from Morris, as executor-vendor, to Morris, individually as purchaser and from Morris to Martin to be set aside. Martin appealed from that order. Affirming the action of the trial court, this Court stated:

"It is claimed that this case does not fall within the principle that excludes a trustee from purchasing, for his own benefit, the property embraced in the trust.

If the principle extended to no other sales than those made by the trustee himself, whether under an order of Court or otherwise, where his character of vendor and purchaser, at the same time, would be utterly inconsistent—his duty as vendor being to sell the property for the highest price that could be obtained, and his interest as purchaser to get it for the lowest—the case would clearly be with the appellant, as he, or rather his vendor, did not purchase at his own sale, but at a judicial sale made by the sheriff.

But the principle is broader in its application, and extends to all sales of the trust property, whether made by the trustee himself under his powers as trustee, or under an adverse proceeding. As a general trustee of the subject, it is his duty to make it bring as much as possible, at any sale that may take place; and, therefore, he cannot put himself in a situation where it becomes his interest that the property should bring the least sum."

12 Ind. 266, 268. The decision held that the fact that the sale was at a public auction conducted by a third person did not validate the executor's sale to himself, and therefore, the trial court properly set aside the conveyance.

We next considered the issue in *Potter v. Smith*, (1871) 36 Ind. 231. Here, Potter was the administrator of one Caruthers and caused real estate to be sold at public auction in all respects in accordance with the probate law and the orders of the probate court. At the auction, however, Smith purchased the property with money that had been given to him by Potter, so that Smith could purchase the property for Potter.

The agreement between the two was that subsequently Smith would convey the property to Potter when Potter requested it. Before this could be done, Potter died. Smith later conveyed the property to Potter's widow and children. On a suit by the heirs of Caruthers to regain title and possession of the land, the court found that the heirs had a right to have the sale set aside. This Court stated in *Potter, supra* :

"It is claimed that this provision, by expressly prohibiting the executor or administrator from purchasing at a private sale, by implication permits him to become the purchaser where the sale is public. The argument is plausible, but we cannot concur in the conclusion. We think that while the statute excludes the executor or administrator from purchasing where the sale is private, the law stands, as to public sales, as if there had been no legislation on the subject.

Mr. Justice Story says, that 'in all cases where a purchase has been made by a trustee on his own account, of the estate of his cestui que trust, although sold at public auction, it is in the option of the cestui que trust to set the sale aside, whether bona fide made or not.' 1 Story Eq., sec. 322.

    \*    \*    \*    \*    \*    \*

'The principle applies,' says Judge Stody in the section above cited, "however innocent the purchase may be in a given case; it is poisonous in its consequences. The cestui que trust is not bound to prove, nor is the court bound to decide, that a trustee has made a bargain advantageous to himself. The fact may be so, and yet the party not have it in his power distinctly and clearly to show it. There may be fraud, and yet the party not be able to show it. It is to guard against this uncertainty and hazard of abuse, and to remove the trustee from temptation, that the rule does and will permit the cestui que trust to come at his own option, and, without showing essential injury, to insist upon having the experiment of another sale."

We quote, also, the following paragraph from I White & T. Lead. Cas. 161, as showing that the right of the cestui que trust does not depend upon any fraud imputed to the trustee:

"It matters not that there was no fraud contemplated and no injury done. The rule is not intended to be remedial of actual wrong, but preventive of the possibility of it. It is one of those processes derived from the system of trusts by which a court of chancery turns parties away from wrong, and from the power of doing wrong, by making their act instantly inure in equity to rightful purposes. *The cases are uniform in declaring that it matters not how innocent and bona fide and free from suggestion of fault the transaction may be, nor how harmless or even beneficial the interference of the trustee may have been, the trustee can never, by his own act, shake off the equity of the cestui que trust to have the benefit of all that he does in the scope of the trust; and the cestui que trust may come into equity as of course, and without the imputation of either fraud or injury, ask for a re-sale of the property; and whether the property was or was not worth more than the amount of the trustee's bid, is never inquired into.*"

36 Ind. 231, 238–240.

Thus it has been the settled law of Indiana since its beginning, that a probate personal representative of the deceased is a trustee of the estate assets and will not be permitted to purchase the property himself as an individual from himself as the personal representative. The reasons for this were clearly and eloquently stated in the above cases as we have set them out to be for the purpose of preserving the integrity of the corpus of the trust and preventing any possibility of any wrong. This was true even though in *Wyncoop, supra*, the personal representative bought at public auction and in *Potter, supra*, that a sale by a trustee, administrator or representative to himself was not apparent on the face of any of the deeds or records in the estate. In the cause before us, it is apparent since the very contract and the contemplated deed in execution thereof provide for Paul Garwood's conveying from himself in the person of the personal representative as seller to his own person as an individual as purchaser.

We see nothing in our law since *Wyncoop* and *Potter* which changes this principle. We see no sound reason presented to us by any of the parties for changing it now. The fact that it has not been presented to us for these many years could reasonably be interpreted as an acceptance and approval of the soundness of the rule. *See* I *Henry's Probate Law and Practice* 5th Ed. Pub. 1946, §§ 271 and 272. Further, the 1953 Probate Code did not provide for a change of this principle. The only provision in the 1953 Probate Code that provided for a settlement of Ind.Code conflicts between the heirs in a distribution of the property are §§ 29–1–9–1, 2 and 3, (Burns 1972) which provide for family agreements. These sections of the probate code provide as follows:

"*Compromise of contest or controversy.*—The compromise of any contest or controversy as to

(a) Admission to probate of any instrument offered as the last will of any decedent,

(b) The construction, validity or effect of any such instrument,

(c) The rights or interests in the estate of the decedent of any person, whether claiming under a will or as heir,

(d) The rights or interests of any beneficiary of any testamentary trust, or

(e) The administration of the estate of any decedent or of any testamentary trust, whether or not there is or may be any person interested who is a minor or otherwise without legal capacity to act in person or whose present existence or whereabouts cannot be ascertained, or whether or not there is any inalienable estate or future contingent interest which may be affected by such compromise, shall, if made in accordance with the provisions of this [Probate] Code, be lawful and binding upon all the parties thereto, whether born or unborn, ascertained or

unascertained, including such as are represented by trustees, guardians of estates and guardians ad litem; but no such compromise shall in any way impair the rights of creditors or of taxing authorities.

*Terms of compromise agreement—Approval by court—Guardian ad litem, appointment.*—(a) The terms of such compromise shall be set forth in an agreement in writing which shall be executed by all competent persons having interests or claims which will or may be affected by such compromise, except those who may be living but whose present existence or whereabouts is unknown and cannot after diligent search be ascertained.

(b) Any interested person may then submit the agreement to the court for its approval and for the purpose of directing the execution thereof by the personal representative of the estate, by the trustees of every testamentary trust which will be affected by the compromise, and by the guardians of the estates of minors and other incompetents and of unborn and unascertained persons and of persons whose present existence or whereabouts is unknown and cannot after diligent search be ascertained, who might be affected by the compromise.

(c) If there shall be any person who, if living, has an interest which may be affected by such compromise, but whose present existence or whereabouts cannot after diligent search be ascertained, or who is a minor or otherwise incompetent and has no guardian of his estate, or if there is any future contingent interest which might be taken by any person not then in being and which might be affected by the compromise, the court shall appoint a guardian ad litem to represent such person.

*Notice to interested persons—Findings by court—Order of approval and execution, effect.*—Upon due notice, in the manner directed by the court, to all interested persons in being, or to their guardians, and to the guardians of all unborn persons who may take contingent interests by the compromise, and to the personal representative of the estate and to all trustees of testamentary trusts which would be affected by the compromise, the court shall, if it finds that the contest or controversy is in good faith and that the effect of the agreement upon the interests of persons represented by fiduciaries is just and reasonable, make an order approving the agreement and directing the fiduciaries and guardians ad litem to execute such agreement. Upon the making of such order and the execution of the agreement, all further disposition of the estate shall be in accordance with the terms of the agreement."

These statutes contemplate the submission to the court of terms of compromise agreements by the heirs and beneficiaries with the personal representatives and trustees as to the distribution and disposition of the assets of the estate. It is apparent also that the statutes contemplate that the disposition and distribution of the assets may be done in such a manner as to depart from the normal procedures provided for in the probate code without such agreements. This is apparent from the last line of 29-1-9-3, which provides: "Upon the making of such order and the execution of the agreement, all further disposition of the estate shall be in accordance with the terms of the agreement." We have set the sections out *in toto*, however, so that it might be observed that the code carefully provides that the compromise must be in writing and must be executed by all competent persons having interest or claims or those which may be affected by such compromise and further provides for notice and/or representation of all those who might be affected but who cannot be given actual notice or recognition for some explainable reason. The sections clearly provide further that this compromise agreement must be submitted to the court, which must find that all interested persons are represented and did enter into the agreement, and which must find that the contest or controversy is in good faith and that the effect of the agreement upon the interest of persons represented by fiduciaries is just and reasona-

ble, and only then can the court make an order approving the agreement and directing its execution.

■ It is the contention of the appellees here that the court was authorized in approving the contract in the case before us because the facts presented to the court were consistent with the provisions of these sections of the statute. Appellees' argument must fail on this issue. Although we do not weigh the evidence presented to the trial court and attempt to second guess it or reweigh that evidence to arrive at a differing conclusion from the court's determination, we must, at any rate, examine the evidence to determine if the minimum requirements were met to comply with the statutory law. The evidence here showed that at least some of the heirs had family meetings prior to the execution of this contract in which they discussed the disposition of this real estate. At one of these meetings it was indicated that Paul Garwood would be given the opportunity to purchase the property if he outbid Dean Garwood. Although it was apparent by those testifying that all of the heirs present were aware of this arrangement, there is no showing that all of them took part in and agreed to it. It is uncontroverted that no agreement was ever reduced to writing and executed by all competent interested persons. Furthermore, the evidence showed that two of the heirs, Frances Rose Garwood and Zora Fae Swing, were not present at the meeting in which these discussions were had. There is no evidence that at any time all of the interested parties came together as the statutes contemplate and reached a compromise or agreement that could be submitted to the court for its approval. Following the meetings above indicated, a contract was entered into without it being referred to any of the heirs in any way, and providing that Paul Garwood was to pay $501 down and a total amount for the property that was in an amount less than that submitted by Dean Garwood in his original offer. This was later claimed to be a typographical error which was to be corrected to make Paul Garwood's bid $1 over that of Dean Garwood's earlier offer. This sequence of events cannot be termed a submission to the court of a compromise family agreement under our statutes since it does not show on its face that it meets the requirements set out in those statutes. The record before the trial court at the hearing clearly showed that this contract provided for the sale and purchase of the property and showed an execution of that contract only by Paul Garwood as purchaser and Garwood and Sommers, co-executors, as sellers. At the time of the trial of this issue the record contained a motion by one of the heirs to set aside the contract, a motion by Paul D. Ewan, Special Administrator, to determine the right of possession and title to real estate, and objections by three of the heirs as to the approval of said contract. There was no showing to the court sufficient to justify it in finding that there had been an agreement by the parties involved to have the property sold to Paul Garwood as a family agreement under the sections of the statute we have quoted above. Paul Garwood cannot be considered a good faith purchaser as he was fully aware during these transactions, of the problems and conflicts in his claiming title. There was insufficient evidence presented for the court to find that any of these heirs had waived the objections they now make in regard to the execution of the contract as there is no showing that they were ever in a situation which required them to take a position as to the existence of the contract or their agreement or disagreement with its terms. The record clearly shows that the execution of this contract and the conflicts that arose from it were apparent throughout the administration of this estate. The first time the issue had been presented to the court when all parties were given an opportunity to be heard on the issues tried in this regard was in the hearing before us now, in which the court made its order of April 30, 1975. The evidence is thus insufficient to sustain a finding of a family agreement.

### III.

■ Appellant further claims that provisions of our statute, Ind.Code § 29–1–15–19

(Burns 1972) has application here. This statute provides:

\* \* \* \* \* \*

(b) No sale of any real estate, made by a personal representative pursuant to a power given him by any will, shall be voided on account of any irregularity or defect if it shall appear:

(1) That the personal representative acted in substantial conformity with the terms and conditions of the power given him by the will; and

(2) That the premises are held by or under one who purchased them in good faith.

This statute does not apply to the facts here. The provision in the will to which the appellees refer gave the co-executors authority to sell the residue and remainder of the estate at private or public sale and at such time or times and for such price or prices as may seem to them in the best interest of the estate. There is no showing then that the personal representative acted in substantial conformity with the terms and conditions of the power given by the will, since there is not even an inference that the testator had in mind that the property was to be sold to co-executor Paul Garwood. Had there been such language in the power or had the facts showed compliance with the family agreement sections, the appellee's arguments might have had merit. The question as to the validity of the contract here is more than an irregularity or defect contemplated by § 29–1–15–19. We are dealing here with a contract which, at its inception, was void, or at best, voidable.

█ Since this contract shows on its face that it was executed by improper parties under our law and since there was no showing that it was done as a family settlement or agreement in compliance with the provisions of the probate code, which would have made it voidable, the trial court should have found that this contract was void.

We accordingly remand this cause to the trial court to correct its judgment consist-ent with this opinion. Judgment accordingly.

All Justices concur.