**Raymond HARKRIDER, Individually and as Personal Representative of the Estate of Georgia Cory, Betty M. Rogers, and June Nelson, Appellants–Plaintiffs,**

v.

**LAFAYETTE NATIONAL BANK, Administrator W/W/A, Kathryn Wilcox and Phillip E. Wilcox, as Personal Representative of the Estate of Floyd E. Wilcox, Deceased, Katherine Wilcox, Individually, Roy McCandlish and Ruby McCandlish, Appellees–Defendants.**

No. 79A02–9102–CV–54.

Court of Appeals of Indiana, Second District.

May 3, 1993.

Douglas R. Brown, Stewart and Irwin, Indianapolis, for appellants-plaintiffs.

Stephen R. Pennell, Nina B. Kirkpatrick, Stuart and Branigin, Lafayette, Robert S. Laszynski, Cynthia L. Garwood, Cooke Laszynski and Moore, Lafayette, for appellees-defendants.

FRIEDLANDER, Judge.

CASE SUMMARY

Appellants-plaintiffs Raymond Harkrider, Betty M. Rogers, and June Nelson (collectively referred to as "Harkrider") appeal the probate court's order approving the final and supplemental reports and accounts filed by Lafayette National Bank (LNB), the personal representative of the estate of Pearl C. Posey (Pearl).

We dismiss [1] the appeal as untimely, award damages and remand for a determination of litigation costs.

FACTS

Pearl and her husband (collectively referred to as "the Poseys") were neighbors of Floyd (Floyd) and Kathryn Wilcox (collectively referred to as "the Wilcoxes") from 1949 until shortly after Mr. Posey's death in 1966. During these years, the Wilcoxes and Poseys became good friends and often visited each other. The Poseys owned a forty acre and an eighty acre farm in Tippecanoe County which, beginning in 1952, were farmed by Floyd pursuant to an agreement that the income and expenses of the farms would be split equally between the two families.

When her husband died in 1966, Pearl moved to Stockwell, Indiana and sold the forty acre farm to Floyd. Floyd continued to farm the eighty acre farm in accordance with the previous arrangement.

In 1973, Pearl was hospitalized. Concerned about her ability to deal with her personal affairs should she become incapacitated, Pearl executed a general power-of-attorney conferring broad powers on Floyd. Pearl underwent, in 1977, cataract surgery and, in 1978, an operation for cancer. During both of these periods Floyd used the power-of-attorney on Pearl's behalf. After the surgeries, Pearl recovered and was able to resume managing her own affairs.

In 1977, Pearl and Floyd met with a Lafayette, Indiana attorney, William Bennett (Bennett), to structure an agreement for Floyd to purchase the eighty acre farm. At the meeting, Pearl announced her desire to give the farm to Floyd. Bennett, who at that point became aware of Pearl's intentions, excused Floyd from the meeting to confer privately with Pearl. Concluding that Pearl was competent and acting of her own free will and in recognition of her gratitude for the assistance Floyd had provided since her husband's death, Bennett recommended that Pearl execute a deed conveying the farm to Floyd and a letter providing that the deed be held in escrow

1. In September, 1991, a different panel of this court addressed a motion to dismiss in this action upon nearly identical grounds. That motion was denied. We have revisited the questions earlier presented upon appellee's resubmission of the motion to dismiss, and after more extensive review we now conclude this appeal should be dismissed.

until Pearl's death at which time it would be delivered to Floyd. Pearl accepted this recommendation and Bennett prepared the necessary documents.

In 1979, Pearl suffered a debilitating stroke and was confined to a nursing home in Lafayette, Indiana. Pearl's brother, Raymond Harkrider, an elderly attorney residing in Chicago, Illinois,[2] visited Pearl at the home and shortly thereafter began investigating Pearl's financial affairs. Harkrider had Pearl sign letters he had written authorizing banks to give him information regarding Pearl's deposits. He conferred with Bennett and, on June 22, 1979, returned to his home in Chicago with Pearl's 1973 will and addenda, copies of the 1977 deed and escrow letter to the eighty acre farm, and a copy of the 1973 power-of-attorney.

Approximately a month later, Harkrider contacted Floyd and demanded that he return the deed to the eighty acre farm.[3] When Floyd refused, Harkrider threatened to initiate guardianship proceedings against Pearl.

The next day the Wilcoxes visited Pearl in the nursing home. When asked about the deed to the eighty acre farm, Pearl assured the Wilcoxes she did not want the deed returned. Pearl also told the Wilcoxes she was aware that Harkrider wanted a guardianship established to handle her personal affairs, and told Floyd that should a guardianship be established, she wanted him to be appointed as her guardian. Floyd conveyed Pearl's wishes to Bennett who prepared a letter to the judge of the Tippecanoe Circuit Court, which Pearl signed, indicating Pearl's desire that Floyd be her guardian should the appointment of one become necessary.

During the next few months, the Wilcoxes continued to visit Pearl in the nursing home while Floyd handled Pearl's personal affairs. In early January 1980, Pearl contacted Bennett about Harkrider's failure to return her financial records. Bennett drafted a letter to Harkrider requesting that the papers be returned. Receiving no response, Bennett sent another letter asking for the records. Bennett still received no response from Harkrider.

In April 1980, Pearl asked Bennett to prepare a new will disinheriting Harkrider because, according to Pearl, her brother had no financial need and she was angry with him for not returning her financial records. Bennett drafted a new will, which was executed by Pearl, and it disinherited Harkrider. On March 18, 1981, Pearl suffered a second stroke. In June of 1981, Harkrider petitioned the Tippecanoe Circuit Court to appoint himself and Purdue National Bank as guardians for Pearl's estate and June Nelson as guardian of her person. Floyd cross-petitioned and asked that he and a corporate fiduciary be appointed. Following a two day hearing, the court on July 27, 1981, established a guardianship and appointed LNB as the guardian of her estate and Floyd as guardian of Pearl's person. Harkrider took an interlocutory appeal and in the first of *seven* appeals relating to the guardianship and probate estates of Pearl, this court affirmed the appointments by memorandum decision. *Posey v. Wilcox* (1983), Ind.App., 451 N.E.2d 1135 (Table) (*Posey I*).

Pursuant to Harkrider's request, *Posey I* was venued to the Fountain County Circuit Court. After an evidentiary hearing, that court, on March 4, 1985, entered an order terminating the guardianship, approving the guardians' final report and two supplements, and approving various expenses and attorney's fees. Harkrider filed a motion to correct errors citing approximately fifty errors. On appeal, Harkrider narrowed the issues down to twelve, including one issue that cited twenty different sub-issues, only three of which this court found qualified for consideration on appeal. This court found against Harkrider on those sub-issues, and determined that, of the twelve issues raised by Harkrider, ten had been decided in *Posey I*. In addition, this court

---

2. Harkrider died on March 3, 1993 while this appeal was pending.

3. The facts cited in the parties' briefs do not explain why Floyd had possession of the deed which was, apparently, never placed in escrow.

concluded that the trial court properly awarded attorney's fees and ordered Harkrider to pay appellate attorney's fees because Harkrider had failed to disclose the previous appeal which raised many of the same issues; had omitted and misstated facts; and had written his brief in a manner calculated to require the maximum expenditure of time by LNB and this court. The case was remanded to the Fountain Circuit Court for a determination of the appropriate amount of appellate attorney's fees. *Posey v. Lafayette Bank and Trust Co.* (1986), Ind.App., 513 N.E.2d 674. *(Posey II)*.

On transfer of *Posey II*, our supreme court declined to address the substantive issues raised by Harkrider, but expressly approved the award of appellate attorney's fees based on Harkrider's improper handling of the appeal. *Posey v. Lafayette Bank and Trust Co.*, Ind., 512 N.E.2d 155, *cert. denied*, 485 U.S. 988, 108 S.Ct. 1292, 99 L.Ed.2d 502.

Following the Fountain Circuit Court's entry of two money judgments against Harkrider for appellate attorney's fees incurred during *Posey II*, Harkrider appealed. This court approved the award of appellate attorney's fees pursuant to the remand order in *Posey II*, and again determined that Harkrider's latest appeal (*Posey III*) was meritless and ordered the case remanded to the Fountain Circuit Court for an award of appellate attorney's fees. *Matter of Guardianship of Posey* (1988), Ind.App., 532 N.E.2d 9, *trans. denied.* *(Posey III)*.

Pursuant to the remand order in *Posey III*, the Fountain Circuit Court again entered a money judgment against Harkrider for appellate attorney's fees. *Again,* Harkrider appealed the entry of judgment. This court approved the award of appellate attorney's fees for *Posey III*, but refused to award appellate attorney's fees for the instant appeal. *Matter of Guardianship of Posey* (1991), Ind.App., 583 N.E.2d 149, *trans. denied.*[4] *(Posey IV)*.

Pearl died in March of 1982 in the midst of this flurry of litigation. Despite Pearl's instructions as to her funeral arrangements, Harkrider caused her to be buried as a pauper. Pearl's 1980 will was admitted to probate in the Tippecanoe Circuit Court and, as requested in her will, Floyd was appointed executor of her estate. On August 16, 1982, Harkrider filed a five count complaint against Floyd individually and as executor of Pearl's estate in the Tippecanoe Circuit Court, seeking: 1) that the deed for the eighty acre farm to Floyd be set aside; 2) that Floyd be ordered to render to the Posey family an accounting of all his dealings on behalf of Pearl; 3) that Floyd be declared a constructive trustee for the benefit of Pearl's estate; 4) that Floyd be removed as the executor of Pearl's estate; and 5) that Pearl's will be declared invalid and its probate set aside. This complaint was venued to the Warren Circuit Court.

On March 23, 1989, the Warren Circuit Court entered judgment denying Harkrider's requested relief finding specifically that the conveyance of the eighty acre farm was a valid transfer; that Floyd had not exerted any undue influence nor fraud over Pearl in connection with the deed or her 1980 will; that Floyd had not breached any fiduciary duties to Pearl while 1) he possessed her power-of-attorney, 2) while he was guardian of her person, nor 3) while he was executor of her estate. The court further found that when Floyd exercised Pearl's power-of-attorney, he did so fairly and honestly; that any benefits Floyd received from Pearl were the result of her free and voluntary acts; and that Pearl was mentally competent at the time she signed the deed and escrow letter and at the time she executed her 1980 will, and further that Pearl's family was not entitled to have Floyd removed as the executor of Pearl's estate. Harkrider appealed, but this court dismissed the appeal due to his failure to timely file an appellant's brief. *Harkrider v. Wilcox* (1990), (appeal dis-

---

4. The vote to deny transfer was 2–2. All justices opposed hearing the merits of Harkrider's claim, while two justices voted for transfer solely to award additional attorney's fees against Harkrider for having pursued yet another meritless appeal.

missed, March 20, 1990, Ind.App. No. 86A04–8912–CV–544, *trans. denied* ) (*Posey V* ).

Floyd died on July 1, 1987 and did not live to see the outcome of *Posey V.* Floyd's personal representatives, Kathryn Ann Wilcox (Kathryn) and Philip E. Wilcox (Philip), petitioned to have LNB appointed successor personal representative in Pearl's estate proceedings. Harkrider objected arguing that Floyd should not be replaced as personal representative until *Posey V* had concluded. Harkrider also sought to conduct discovery regarding the proposed successor and argued that he and Pearl's two sisters, as Pearl's closest relatives and beneficiaries of her residuary estate, should have the right to nominate and appoint the successor representative to Pearl's estate. Following a hearing on August 31, 1987, LNB was appointed personal representative replacing Floyd. Harkrider appealed and the appointment was affirmed by this court. *In re Estate of Posey* (1990), Ind.App., 548 N.E.2d 1205. (*Posey VI* ).

On January 26, 1988, Kathryn and Philip, acting as co-administrators of Floyd's estate, filed an accounting and petition to approve and confirm their distribution of estate proceeds. The court set a hearing on the petitions for August 29, 1988. Before the hearing, LNB, on June 15, 1988, petitioned to be removed as Pearl's personal executor, having concluded that the assets of Pearl's Estate had been depleted by extensive litigation. Harkrider did not object to the resignation of LNB. Although the probate court approved LNB's resignation on July 13, 1988, LNB was not discharged by the court until November 5, 1990.

LNB's final account of Pearl's Estate was set for hearing on August 29, 1988, and Harkrider moved to stay such proceedings until the outcome of *Posey V.* The Tippecanoe Circuit Court granted the stay and reset the hearing for September 25, 1990. Following a hearing on that date, the probate court on October 18, 1990, entered an order approving LNB's final accounting and proposed distribution of estate funds, and ordered LNB to file a supplemental report showing the funds had been distributed as provided by the court's order approving LNB's final accounting and distribution. *See* IC 29–1–17–13. The supplemental report and discharge was approved by the court on November 5, 1990, and, on December 4, 1990, Harkrider filed a praecipe to bring this appeal.

## ISSUES

On appeal, we consider two issues:

1. Whether Harkrider failed to file his praecipe on time therefore depriving this court of jurisdiction?

2. Whether Harkrider should be sanctioned with an award of appellate attorney's fees and other damages [5] pursuant to Indiana Rules of Trial Procedure, Appellate Rule 15(G)?

## DECISION

*ISSUE ONE*—Whether Harkrider failed to file his praecipe on time therefore depriving this court of jurisdiction?

*PARTIES' CONTENTIONS*—LNB argues that the probate court's order of October 18, 1990 *approving* the final accounts and distribution of the successor personal representatives is a final, appealable judgment and that the time to initiate an appeal began running from that date, therefore making Harkrider's praecipe for appeal, filed on December 4, 1990, untimely. Harkrider claims the praecipe was not filed late because the final, appealable judgment was the court's order of November 5, 1990 approving LNB's supplemental final report showing the estate's funds had been distributed as provided by the court order approving the final accounting.

*CONCLUSION*—Harkrider's appeal is not timely.

Indiana Rules of Procedure, Appellate Rule 2(A) governs the initiation of an appeal:

**5.** Although LNB doesn't address the issue of whether other damages besides appellate attorney's fees might be available under A.R. 15(G), we address the issue *sua sponte.*

"Initiation of the Appeal. An appeal is initiated by filing with the clerk of the trial court a praecipe designating what is to be included in the record of the proceedings. The praecipe shall be filed within thirty (30) days after the entry of a final judgment or an appealable final order or, if a motion to correct error is filed, within thirty (30) days after the court's motion is deemed denied under Trial Rule 53.3.... Unless the praecipe is filed within such time period, the right to appeal will be forfeited."

■ When a praecipe is filed past the thirty day deadline provided by A.R. 2(A), this court is without jurisdiction and must dismiss the appeal. *Bruner v. Fidelity Nat'l Life Ins. Co.* (1983), Ind.App., 443 N.E.2d 1260.

The question posed by this case is a simple one: Is the October 18th order approving the personal representative's final accounting and distribution or the November 5th order approving the supplemental report, the "final appealable order" which starts the clock running on Harkrider's appeal?

■ A final judgment from which an appeal will lie is one which "determines the rights of the parties in the suit, or a distinct and definite branch of it, and reserves no further question or direction for further determination." *Estate of Garwood* (1980), 272 Ind. 519, 400 N.E.2d 758, 761 (quoting *Zumpfe v. Piccadilly Realty Company* (1938), 214 Ind. 282, 13 N.E.2d 715). A proceeding supplemental to the trial court's final judgment does not affect the rights of the parties, and a ruling issued pursuant to that supplemental proceeding does not constitute an appealable final judgment. *See Garwood, supra.*

■ IC 29-1-17-2(d) (1988) describes the status of an order which approves a final accounting:

"The decree of final distribution shall be a *conclusive determination* of the persons who are the successors in interest to the estate of the decedent and of the extent and character of their interest therein, subject only to the right of ap-

peal and the right to reopen the decree. *It shall operate as the final adjudication of the transfer of the right, title and interest of the decedent to the distributees therein designated...."*
(Emphasis supplied.)

IC 29-1-17-13 (1988) provides for the filing of a supplemental report upon distribution of the estate assets:

"Upon the filing of a supplemental report of distribution together with receipts or other evidence satisfactory to the court that distribution has been made as ordered in the final decree, the court shall enter an order of discharge. The discharge so obtained shall operate as a release from the duties of personal representative and shall operate as a bar to any suit including suits by persons under disability, against the personal representative and his sureties except suits which are commenced within one (1) year from the date of the discharge and are based solely upon alleged mistake, fraud or wilful misconduct on the part of the personal representative."

It is evident from a comparison of the two statutes that it is the decree or order approving the final accounting under IC 29-1-17-2 which determines the rights of the heirs in the estate and not the supplemental report which only provides notice to the court that the personal representative has carried out the ministerial duties of distributing the assets of the estate to the appropriate recipients.

Ministerial duties, even if ordered by the court, do not affect the finality of a judgment. For example, in *Garwood, supra,* heirs of an estate petitioned to set aside a contract entered into by the executors of an estate to sell the decedent's property to one of the co-executors, claiming that the purchase price was insufficient. The trial court denied the petition and approved the sale, directing that the deed to the property be delivered upon payment of the purchase money. While other estate matters were still pending, and before the deed and money were exchanged by the executors and purchasers, the heirs timely appealed the court's order approving the sale of the

property. The Court of Appeals *sua sponte* determined the court's order was interlocutory in nature and dismissed the appeal. In reversing this decision, our Supreme Court declared:

"The ministerial acts of receiving the money and delivering the deeds do not affect the finality of the judgment. *These are acts performed by the parties pursuant to the judgment of the court. It is apparent that any judgment entered by a court which requires only the execution of it, and leaves nothing further for the court to decide is a final judgment.* The trial court, in the case before us, declared that title and possession of the subject real estate was vested in the purchaser-appellee and that the contract of sale entered into on November 10, 1970, was valid and enforceable. The trial court ordered the special administrator to execute transfer and deliver a deed for the real estate upon payment of the balance of the purchase price, reserving no power to itself to deny the validity of the sale of the subject real estate to the appellee. This, then, was the final appealable judgment entered by the trial court on this issue...."

*Garwood, supra.* 272 Ind. at 525, 400 N.E.2d at 762 (emphasis supplied).

The clock on Harkrider's appeal began running not on November 5th when the supplemental report was approved, but on October 18th when the distributees' right to take (as well as how much they were to receive) under the will was conclusively determined by the court. *See* IC 29–1–17–2(d). Therefore, Harkrider's praecipe was not filed on time and this court has no choice but to dismiss this appeal. We will, nonetheless, consider the issues raised by Harkrider in order to determine whether they are so lacking in merit as to support an award of appellate attorney's fees and other damages.

*ISSUE TWO*—Whether Harkrider should be sanctioned by an award of appellate attorney's fees and other damages pursuant to Indiana Rules of Trial Procedure, Appellate Rule 15(G)?

*PARTIES' CONTENTIONS*—LNB argues that Harkrider has repeatedly relitigated issues which were decided against him and that his motivation for continuing extensive litigation is to deplete Pearl's estate. Harkrider responds that he has engaged in "responsible legal debate to which [he] is constitutionally entitled" and that he has offered "concise, cogent, and rational arguments" in support of his position. *Appellant's reply brief* at 2–3.

*CONCLUSION*—An award of appellate attorney's fees, and compensatory and punitive damages are proper under A.R. 15(G).

■ Harkrider first claims the probate court abused its discretion in failing to appoint a successor personal representative after accepting LNB's resignation and that LNB did not have authority to continue acting as personal representative of Pearl's estate for nearly two and a half years after its resignation. In arguing he was prejudiced, Harkrider speculates that during the interim period "petitions for substantial fees were granted and the estate was without a managing agent to evaluate the propriety of those fee petitions." *Appellants' reply brief* at 10.

It is axiomatic that any error occurring in the trial court is not reversible unless it is accompanied by prejudice. *P.S. by Harbin v. W.S.* (1983), Ind., 452 N.E.2d 969. Harkrider's claim of prejudice rests on the assumption that a different personal representative would have determined the fees in question were improper and should not have been granted. This claim is undermined by the fact that LNB's final accounting, including fees, was approved by the trial court as being proper. *Record* at 1121–24. Also, Harkrider's challenge to that judgment was waived on appeal for the failing to timely file an appellant's brief in *Posey V.* Harkrider, as he has done in the previous appeals, is raising issues previously litigated. In addition, he has failed to demonstrate prejudice by the court's delay in appointing a successor personal representative to replace LNB.

■ Harkrider's final claim of error is that, due to conflicts of interest and other irregularities, the probate court's approval

of the personal representatives' final accounts was an abuse of discretion. A comparison of this alleged error to those raised in *Posey V*, indicates that Harkrider is again seeking to raise an issue previously litigated.

In the complaint, which was pending in the Warren Circuit Court, and formed the basis of *Posey V*, Harkrider urged that the deed to Floyd should be set aside because it was obtained through fraud and the exercise of undue influence and in violation of fiduciary duties Floyd owed to Pearl (Count I); that Floyd should be ordered to provide an accounting to Pearl's family of all dealings and transactions he had with Pearl or conducted on her behalf and that Floyd should be declared a constructive trustee for the benefit of Pearl's estate of any and all benefits he derived while acting as her fiduciary because he violated fiduciary duties to her (Counts II and III); that Floyd should be removed as the executor of Pearl's estate because his own interests conflicted with those of the estate (Count IV); and that Pearl's will should be set aside as invalid because she was of unsound mind when she executed it, and Floyd exercised undue influence over Pearl and defrauded her in procuring her execution of the will. *Record* at 749–57.

After an evidentiary hearing, the Warren Circuit Court concluded:

1. The law is with the defendants and against the plaintiffs. *Plaintiffs are not entitled to recover any damages or to any of the relief which they seek.*

2. The conveyance of Mrs. Posey's 80 acre farm to Mr. Wilcox was a valid transfer. The evidence was sufficient to show that [Pearl] was mentally competent at the time she signed the deed and escrow letter in 1977. The evidence was sufficient to show that there was no fraud or undue influence exerted over [Pearl] and that her decision to make a gift of the 80 acre farm to [Floyd] was entirely voluntary and done on her own free will. [Pearl] had formed the intent to make a gift of her 80 acre farm to [Floyd] before she signed the deed. She was motivated to make a gift of her 80

acre farm to [Floyd] by the love and affection which she felt toward him as a result of the many years of their having been friends and neighbors and the services and benefits which Mr. and Mrs. Wilcox had provided to [Pearl] over many years. Therefore, because the gift was made in the exercise of [Pearl's] free and voluntary choice, the deed to the farm should not be set aside and title to the farm should remain vested in the estate of [Floyd].

3. The evidence is clear and convincing that [Pearl] was mentally competent at the time she executed her second will on April 16, 1980. *The evidence is sufficient to show that there was no fraud or undue influence exerted over [Pearl] with respect to this will....*

4. The evidence is sufficient to show that no constructive trust should be imposed upon the estate of [Floyd] for any benefit which he obtained from [Pearl] or her estate. *The evidence is sufficient to show that [Floyd] did not commit any fraud or exercise any undue influence over [Pearl], and that any benefits or interests which he received from [Pearl] or her estate were the result of [Pearl's] own free and voluntary acts.*

5. ... *The evidence is sufficient to show that [Floyd] did not receive any benefit or interest without consideration from [Pearl] or her estate as a result of any fraud or undue influence, and that whatever interest or benefit [Floyd] received from [Pearl] was the result of her own free and voluntary acts. The evidence is sufficient to show that during the time that [Floyd] exercised the power-of-attorney for [Pearl] that he did so fairly and honestly.*

6. Mr. Harkrider, Betty Rogers, and the estate of Georgia Cory are not entitled to have [Floyd] removed as the Executor of the estate of [Pearl]. *At the time of his appointment and at all times prior to his death, [Floyd] was an appropriate and suitable person to serve as Executor of the estate of [Pearl]. There was no fraud or undue influence by [Floyd] or any other person over [Pearl] with regard to the se-*

*lection of [Floyd] as the Executor of her estate. The decision of [Pearl] to nominate [Floyd] as Executor of her estate was the product of her own free and voluntary will.*

7. The challenge of Mr. Harkrider, Betty Rogers, and the estate of Georgia Cory to the appointment of [Floyd] as Executor of the estate of [Pearl] has been rendered moot by the death of [Floyd] and in any event there is insufficient evidence to sustain such challenges.

8. The evidence is sufficient to show that [Floyd] always dealt fairly and honestly with Pearl, and any benefits which he or [Pearl] received without consideration from [Pearl] received without consideration from [Pearl] were made by [Pearl] at times when she was mentally competent and were the result of her own free and voluntary acts.

9. The claims of Mr. Harkrider, Betty Rogers, and the estate of Georgia Cory that [Floyd] received the deed to [Pearl's] 80 acre farm as the result of any breach of fiduciary duty or as a result of undue influence is without merit and legally unfounded."

*Record* at 996–98.

In this appeal, Harkrider argues that the Warren Circuit Court's judgment should be reversed because, as Pearl's fiduciary, Floyd had a "conflict of interest [which] prevented his proper administration of Pearl's guardianship estate," *Appellant's brief* at 30. Although Harkrider claims the conflict of interest issue was not previously litigated, Harkrider's complaint and the relief he requested, as well as the court's conclusions that Floyd was an "appropriate and suitable person to serve as Executor of the estate," that "[t]here was no fraud or undue influence by [Floyd]" with regard to his selection as executor of her estate, and that Floyd did not breach any fiduciary duty which he may have owed to Pearl while possessing her power-of-attorney, as guardian of her person, or as executor of

her estate," *record* at 996–98, overwhelmingly demonstrate that the issues Harkrider seeks to raise in this appeal were indeed litigated in the Warren Circuit Court.

■ The doctrine of "issue preclusion" bars the relitigation of a previously adjudicated issue in a subsequent action involving the same parties. *Johnson v. Anderson* (1992), Ind.App., 590 N.E.2d 1146; *see also Gayheart v. Newnam Foundry Co.* (1979), 271 Ind. 422, 393 N.E.2d 163. The issues raised by Harkrider in this appeal are merely a restatement of issues already addressed by the Warren Circuit Court. *Posey V.* As such, we would have been prohibited to consider the issues raised by Harkrider on this appeal even had his praecipe been timely filed. *See Phar–Crest Land Corp. v. Therber* (1969), 251 Ind. 674, 244 N.E.2d 644.

A review of the record in this case as well as the other *Posey* appeals reveals a shocking abuse of our legal system by Harkrider. Harkrider has repeatedly relitigated issues previously addressed by this court on appeal and done so in a manner calculated to result in a maximum expenditure of time and money by Pearl's estate and the trial and appellate courts which have had to sort through the meritless issues launched by Harkrider. As a result, this court has repeatedly awarded appellate attorney's fees[6] because of Harkrider's meritless claims. *See Posey I, II, III,* and *IV.* The estate, suffering from Harkrider's relentless and unnecessary litigation, now appears to be insolvent.

The motive behind Harkrider's unceasing litigiousness is readily apparent. Angered by Pearl's decision to disinherit him, he has embarked on a systematic scheme to defeat Pearl's testamentary intentions. That Harkrider is not engaging in "responsible legal debate" is highlighted by a revealing

---

**6.** This court has previously referred to judgments against Harkrider as an award of *"punitive* appellate attorney's fees." Upon reflection we believe the term to be a misnomer; by definition "attorney's fees" are designed to com-

pensate a party for *actual* legal expenses incurred as a result of an appeal. Thus, attorney's fees are compensatory rather than punitive in nature.

statement made by a Harkrider attorney[7] in explaining why Harkrider was pursing such extensive litigation against Pearl's estate: *"[A]ll we want to do is bankrupt this estate so we can close it." Record* at 1366. All in all, this record reflects an outrageous effort to deplete an estate by a disgruntled, disinherited relative, one who as an attorney, has well executed a Machiavellian plan of destruction.

Damages for a frivolous appeal are discretionary and may be awarded when an appeal is deemed to be permeated with meritlessness, bad faith, frivolity, harassment, vexatiousness, or brought for purpose of delay. *Tipton v. Roerig* (1991), Ind.App., 581 N.E.2d 1279. In determining a proper award of damages this court is not limited to an award of appellate attorney's fees as compensation for Harkrider's relentless litigation. Rather, A.R. 15(G) provides:

> "(G) Damages Against Appellant. If the court on appeal affirms the judgment, damages may be assessed in favor of the appellee not exceeding ten per cent (10%) upon the judgment, in money judgments, *and in other cases in the discretion of the court;* and the court shall remand such cause for execution."

(Emphasis supplied).

This court recognizes that attorney's fees are only one cost incurred when an estate is immersed in litigation. Thus, this court remands this matter for a determination of the actual costs incurred by the estate as a result of Harkrider's appeal in this case. Upon a determination of that cost, the trial court is ordered to enter judgment in that amount for the estate and against the appellants.

This court further recognizes that it has discretionary authority under A.R. 15(G) to impose punitive sanctions against Harkrider for his disgraceful conduct in using the trial and appellate courts of this state in an attempt to bankrupt Pearl's Estate with meritless litigation. A.R. 15(G); *See Lesher v. Baltimore Football Club* (1987), Ind., 512 N.E.2d 156; *Posey v. Lafayette Bank and Trust Co.* (1987), Ind., 512

N.E.2d 155, *cert. denied* 485 U.S. 988, 108 S.Ct. 1292, 99 L.Ed.2d 502; *Orr v. Turco Mfg. Co., Inc.* (1987), Ind., 512 N.E.2d 151. Pursuant to that authority, and our recognition that Harkrider's appeal is taken in bad faith, is frivolous, is harassing, is vexatious, and is an abuse of the legal system, this court directs the trial court to, upon remand, order Harkrider to pay additional, punitive damages in an amount to be determined by the trial court in a sum not to exceed the actual costs incurred by the estate as a result of this appeal. *See Lesher, supra; Orr, supra.*

Appeal dismissed and remanded for proceedings consistent with this opinion.

SULLIVAN, J., concurs.

CONOVER, J., concurs in result with separate opinion.

CONOVER, Judge, concurring in result.

While I concur with the majority that Harkrider's calculated pursuit of this series of appeals, designed to bankrupt Pearl's estate, is unconscionable and a contemptuous flaunting of our appellate process, I cannot agree with the mild sanctions imposed upon Harkrider. In addition to remanding the cause for imposition of punitive damages for the costs incurred by the estate, I believe this court, under Ind. Appellate Rule 15(G), is additionally obligated to discipline such utterly contemptuous behavior. Harkrider was a person skilled in the law who used our appellate process as a weapon, not as a tool for seeking legitimate remedial relief. Such calculated, contemptuous indifference to the rights of his opponents, to the legitimate purposes for which the right of appeal exists, and to the equitable conservation of judicial time at all levels demands much sterner punishment, I believe.

In that light, I would impose personally upon Harkrider and his estate an additional civil penalty in the sum of $150,000, to be paid directly to the clerk of the Tippecanoe Circuit Court, the same to be proportionately paid, subject to additional attorney fees

---

7. This statement was not by Harkrider's counsel of record in this appeal.

to be approved by that court, by the clerk to the heirs and distributees of the estate of Pearl C. Posey and the estate of Floyd Wilcox according to the plan of distribution approved heretofore by that court in said estates, as additional punishment for such outrageous conduct, and to deter similar conduct by others so inclined in the future.